(Nos. 16322-16485.—Reversed and remanded.)
JOSEPH SINOPOLI, Defendant in Error, *vs.* THE CHICAGO
RAILWAYS COMPANY *et al.* Plaintiffs in Error.

*Opinion filed April 24, 1925.*

1. NEGLIGENCE—*general rule as to admissibility of rules of carrier of passengers.*  Rules of a carrier of passengers as to the conduct of its employees are admissible in evidence where their violation is the negligence complained of as causing the injury, or where they tend to prove that the defendant is guilty of the negligence complained of, or show an admission that the exercise of due care for the safety of its passengers requires the observance of the conduct prescribed by the rules, but where they have no such tendency they are not competent.

2. SAME—*when rule of street railway company is not admissible in action for injury to passenger.*  Where the plaintiff in an action against a street railway company alleges negligence in starting the car while he was in the act of alighting from the step, a rule of the company providing that the car door must not be opened until the car stops and must be closed before the car starts is irrelevant and incompetent; nor can it be held admissible upon the question of the credibility of the witnesses where it is not offered for that purpose but as evidence in chief.

3. SAME—*constitution does not guarantee right to review of facts in Supreme Court.*  The provision of the Practice act that judgments of the Appellate Court shall be final as to all matters of fact in controversy in actions at law is not unconstitutional, as the right of trial by jury as guaranteed in the constitution does not include a right to have a review of the facts in the Supreme Court; and the right of the Appellate Court to review the evidence and grant a new trial is not a constitutional right but is purely statutory and is subject to the control of the legislature. (*Mirich* v. *Forschner Contracting Co.* 312 Ill. 343, explained.)

4. CONSTITUTIONAL LAW—*constitution guarantees common law right of trial by jury.*  The right of trial by jury as guaranteed by the constitution is the right as it existed at common law and as it was enjoyed at the adoption of the constitution.

5. SAME—*what constitutes a jury trial.*  The right of trial by jury is the right to have the facts in controversy determined, under the direction and superintendence of a judge, by twelve impartial jurors having the qualifications and selected in the manner

316—39

required by law, whose verdict must be unanimous and shall be conclusive, subject to the right of the judge to set it aside if in his opinion it is against the law or the evidence and to grant a new trial.

WRIT OF ERROR to the First Division of the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. M. MANGAN, Judge, presiding.

BROWN, FOX & BLUMBERG, (JOHN R. GUILLIAMS, CHARLES LEROY BROWN, FRANK L. KRIETE, and JOSEPH D. RYAN, of counsel,) for plaintiffs in error.

FINN & MILLER, (C. HELMER JOHNSON, of counsel,) for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Appellate Court affirmed a judgment of the circuit court of· Cook county for $2500 in favor of Joseph Sinopoli against the Chicago Railways Company and others, operating as the Chicago Surface Lines, and a writ of *certiorari* was granted them for a review of the record. This is No. 16322. They have also sued out a writ of error, which is No. 16485, and the two cases were argued and have been submitted together.

The cause of action grew out of an injury received by the plaintiff in alighting from a street car operated by the defendants in the city of Chicago. The declaration alleged that the defendants were operating the car along Halsted street, and when it reached the intersection of Thirty-ninth street caused it to be stopped for the purpose of allowing passengers to alight, and that while the plaintiff was in the act of alighting from the car the defendants negligently caused it to be started, whereby the plaintiff was thrown to the pavement and injured. The contention of the defendants is, that when the car was a short distance north

of Thirty-ninth street the plaintiff asked the motorman to let him off so that he could catch a Thirty-ninth street car, which was then rounding the curve from Halsted street east on Thirty-ninth; that the motorman opened the door a few feet north of Thirty-ninth street, and when the car's speed was reduced, but while it was still in motion, the plaintiff stepped off the car and fell. The evidence was contradictory. The testimony of the plaintiff and his two witnesses who testified as to the occurrence was, that after the car stopped the motorman opened the door, the plaintiff got down on the step, and as he was stepping off the car it started with a jerk and threw him on the pavement, while the testimony of the motorman and another witness for the defendants tended to show that the facts were as claimed by the defendants.

The car was a pay-as-you-enter car, and the plaintiff offered in evidence a rule of the defendants which provided that "the front exit door on payee cars must not be opened until car has stopped and will be closed before car starts." The rule was admitted over the defendants' objection, and it is insisted that its admission was erroneous. The only negligence charged in the declaration was the starting of the car after it had stopped, while the plaintiff was in the act of alighting. To sustain this charge it was necessary for the plaintiff to prove that the car had stopped before the plaintiff began to get off. The rule had no tendency to establish this fact. The fact that the motorman had opened the door did not tend to prove that the car had stopped, though it was a violation of the rule to open it before stopping. If it had been negligence for the motorman to open the door before the car stopped, such negligence would have had no connection with the injury to the plaintiff, who got off after the car stopped. Rules of a carrier of passengers as to the conduct of its employees may be admissible in evidence where their violation is the negligence complained of as causing the injury, or where they tend to prove that the

defendant is guilty of the negligence complained of, or as evidence tending to show an admission that the exercise of due care for the safety of its passengers requires the observance of the conduct prescribed by the rules, but where they have no such tendency, evidence as to the rules is not competent. The rule was not admissible, for whether the door was opened before or after the car stopped made no difference in a case where the negligence is charged to have occurred after the car stopped, and the other part of the rule, which requires the closing of the door before the car starts, is irrelevant, because the closing of the door before starting the car could have had no tendency to prevent injury to the plaintiff, who was outside the door, standing on the step, in the act of stepping to the ground.

The Appellate Court held the rule competent as bearing on the credibility of the witnesses on the question whether the motorman opened the door while the car was in motion or not till after it stopped. The rule was not offered by the plaintiff for any such purpose. It was offered as evidence in chief, when there was no question of the credibility of witnesses. If the only reason the rule was competent was on the question of the credibility of witnesses it was then clearly incompetent. The defendants afterward introduced testimony on this question which contradicted that introduced by the plaintiff. The Appellate Court bases its opinion on the proposition that it is more probable that the motorman would obey the rule than that he would disobey it. If this were so, then the defendants ought to be permitted to show that the motorman was an exceedingly careful man, and particularly so about the observance of this rule, and the plaintiff then should be permitted to contradict this evidence, thus diverting the minds of the jurors from the issue of the negligence charged, to the collateral question of the motorman's habit as to observing the rule. In *Chicago, Burlington and Quincy Railroad Co.* v. *Lee,* 60 Ill. 501, where the negligence charged was the failure

to give a crossing signal as the train approached the crossing where a fatal accident occurred, evidence was introduced, to show such failure, that trains had passed the crossing at other times without giving a signal. The judgment was reversed for admitting the evidence, the court saying: "From the fact of omitting to ring the bell at any previous time no reasonable inference could be drawn that it was not rung on the occasion in question." In *Peoria and Pekin Union Railway Co.* v. *Clayberg,* 107 Ill. 644, the defendant sought to show that the deceased was not observing due care for his own safety at the time of the accident by proving that before that time he was in the habit of jumping on trains, but the evidence was held inadmissible, its effect clearly being to raise a collateral and immaterial issue. In *West Chicago Street Railroad Co.* v. *Torpe,* 187 Ill. 610, (an action for negligence resulting in death,) the main controversy on the trial was over the speed of the train which caused the injury at the time the deceased tried to board it. The testimony varied from very slowly to very rapidly, and the court permitted the plaintiff to show that the railroad company had a custom of stopping its cars near the point where the accident occurred. It was held to be prejudicial error to permit the plaintiff to corroborate his witnesses who had testified on that question, by proving that at other times trains ran slowly or stopped at this particular place for the purpose of receiving passengers. These cases did not involve rules but they did involve customs or habits, which were of as much probative force as rules in determining probabilities, and they hold that evidence as to such matters is incompetent.

The plaintiffs in error contend that it was error for the court to instruct the jury that "it is the duty of a common carrier of passengers to exercise the highest degree of care reasonably consistent with the mode of conveyance adopted and the practical operation of its road, to secure the safety of its passengers." The instruction is a correct statement

of the rule of law as to the degree of care which the defendants owed to their passengers, but the objection made to it is that it declared the duty of a carrier much more broadly than any breach of duty that was alleged in the declaration; that the jury were told by it that the carrier was under a duty to exercise the highest degree of care, in every respect, to secure the safety of its passengers, and that therefore the carrier would be liable for any breach of duty to secure the safety of its passengers, regardless of whether that breach was alleged or not. The instruction stated abstractly the duty of the defendants without attempting to make a direct application of it to the particular facts. The particular facts alleged were, that the defendants having stopped the car to allow passengers to alight negligently started it while the plaintiff was alighting, causing him to be thrown down and injured, and the jury were instructed, at the request of the defendants, by instruction No. 25, that these were the allegations of each count of the declaration, and that they would not be authorized or warranted in determining whether the defendants were guilty of any negligence excepting such as was charged against them in the plaintiff's declaration as set forth in that instruction. The abstract instruction, therefore, could not have misled the jury into believing that they might base their verdict on the opening of the door of the car or any other negligence than that alleged.

In addition to the general assignment that the Appellate Court erred in not sustaining each of the errors assigned in the Appellate Court, the plaintiffs in error have specifically assigned that the Appellate Court erred in not reversing the judgment of the circuit court because the latter court erred in refusing to hold that the verdict was manifestly contrary to the weight of the evidence and in refusing to grant a new trial to the defendants, and that the Appellate Court erred in denying the motion of the defendants for an appeal to this court. Counsel have pre-

sented in their brief and argument that the verdict is clearly
against the weight of the evidence, basing the right of the
defendants to do so on the unconstitutionality, as averred
in their assignments of error, of the provisions of sec-
tion 120 of the Practice act that the judgment of the Ap-
pellate Court shall be final and conclusive as to all matters
of fact in controversy except in chancery, and the provi-
sions of sections 121 and 122 of the Practice act that the
judgments of the Appellate Court shall be final except in
cases in which a certificate of importance or a writ of er-
ror may be granted, and that the Supreme Court shall re-
examine cases brought to it from the Appellate Court by
appeal or writ of error as to questions of law, only, and
no assignment of error shall be allowed calling in question
the determination of the inferior or Appellate Court upon
controverted questions of fact.

The claim that the provisions of the Practice act are
unconstitutional is based upon section 5 of article 2 of the
constitution, which provides that the right of trial by jury
as heretofore enjoyed shall remain inviolate. The case of
*Mirich* v. *Forschner Contracting Co.* 312 Ill. 343, is cited
as holding that the right of jury trial referred to in that
section of the constitution comprehended the features of
appellate review, and that it follows from that decision
that no legislation can change the essential and characteris-
tic features of appellate review of jury trials as it existed
prior to 1870. The case cited lends no support to this con-
tention. The question decided in that case was whether the
Appellate Court was authorized by section 120 of the Prac-
tice act to reverse the judgment of a trial court based upon
the verdict of a jury without remanding the cause where
there was a substantial conflict in the evidence, and the de-
cision was that such power exists only in cases where a
jury has been waived in the trial court or the trial court
would have been justified in directing a verdict because the
evidence did not tend to establish the cause of action, and

that a reversal without remandment, with a conclusive finding of facts contrary to the verdict, would be a' manifest deprivation of the right to a trial by jury, but there was no intimation that the method of reviewing a judgment of the trial court was a part of the jury trial, the right to which was protected by the constitution, or even that the right to any review was so protected. If it has ever been decided that the right to a jury trial includes the right to a review by the Appellate Court or by any particular court, the authority must be looked for elsewhere than in the *Mirich case.*

The right to a jury trial has been guaranteed in the State of Illinois ever since the existence of the State, as it is in the other States of the Union and in the courts of the United States. The constitution of 1818 provided "that the right of the trial by jury shall remain inviolate;" (art. 8, sec. 6;) the constitution of 1848, "that the right of trial by jury shall remain inviolate;" (art. 13, sec. 6;) the constitution of 1870, that "the right of trial by jury as heretofore enjoyed shall remain inviolate." (Art. 2, sec. 5.) The right of trial by jury is not defined in either constitution. The provision in each means the same thing, which is the right of trial by jury as it existed at common law and was enjoyed at the adoption of the respective constitutions. The ordinance of 1787 provided by article 2 of section 14 that the inhabitants of the Northwest Territory should always be entitled to the benefits of the trial by jury. The act of Congress of May 7, 1800, which divided that territory and constituted of its western portion the Indiana Territory, provided that the inhabitants of the latter territory should be entitled to and enjoy all and singular the rights, privileges and advantages granted and secured to the people by the ordinance of 1787. The act of Congress of February 3, 1809, dividing the Indiana Territory and constituting Illinois of its western portion, provided that the inhabitants of Illinois should be entitled

to and enjoy all the rights, privileges and advantages granted
to the people by the ordinance of 1787. When the consti-
tution of 1818 was adopted the right of jury trial was rec-
ognized as existing and it was declared that it should re-
main inviolate. This referred to the right of trial by jury
as it existed at the time that constitution was adopted in
the Territory of Illinois and had previously existed in the
State of Virgina and as it was guaranteed by the ordinance
of 1787 and the acts of Congress constituting the Terri-
tories of Indiana and Illinois. This right was inviolate
under the constitution of 1818, and the right to which the
constitution of 1848 refers is the same right and was
equally inviolate under that constitution. At the time of
the adoption of the constitution of 1870 the right as it
had been theretofore enjoyed was the same as existed at
the adoption of the constitution of 1848 and of the first
constitution, in 1818. Whatever modifications in the pro-
cedure have been made by statute did not affect the sub-
stantial right, and the words "as heretofore enjoyed" were
not intended to engraft upon the constitutional right of
trial by jury any such procedural changes as might have
been made before that time. In reference to these words
it was said in *George* v. *People,* 167 Ill. 447: "The word
'heretofore,' as used, evidently relates to the past, and in
order to determine the true meaning of the words 'the right
of trial by jury as heretofore enjoyed,' it is necessary to
go back to the common law of England. When this is
done it will be found that the right of trial by jury consti-
tutes certain specified things, which cannot be dispensed
with or disregarded on the trial of a person charged with
a felony. A jury of twelve men must be empaneled, and
any less number would not be a common law jury. The
jury must be indifferent between the prisoner and the peo-
ple. They must be summoned from the vicinage or body
of the county in which the crime was alleged to have been
committed. The jury must unanimously concur in the ver-

dict. (This latter is one of the old requirements of the common law.) The final decision upon the facts is to rest with the jury, and the court cannot interfere to coerce them to agree upon a verdict against their convictions."

"Trial by jury, in the primary and usual sense of the term at common law and in the American constitutions, is not merely a trial by a jury of twelve men before an officer vested with authority to cause them to be summoned and impaneled, to administer oaths to them and to the constable in charge, and to enter judgment and issue execution on their verdict; but it is a trial by a jury of twelve men, in the presence and under the superintendence of a judge empowered to instruct them on the law and to advise them on the facts, and, except on acquittal of a criminal charge, to set aside their verdict if in his opinion it is against the law or the evidence. This proposition has been so generally admitted, and so seldom contested, that there has been little occasion for its distinct assertion." (*Capital Traction Co.* v. *Hof,* 174 U. S. 1.) In that case the court quotes with approval the language of Judge Sprague, of the District Court of the United States for the district of Massachusetts, in the case of *United States* v. *1363 Bags of Merchandise,* 2 Sprague, 85: "The constitution secures a trial by jury without defining what that trial is. We are left to the common law to learn what it is that is secured. Now, the trial by jury was, when the constitution was adopted and for generations before that time had been, here and in England, a trial of an issue of fact by twelve men under the direction and superintendence of the court. This direction and superintendence was an essential part of the trial. At the time of the adoption of the constitution it was a part of the system of trial by jury in civil cases that the court might in its discretion set aside a verdict. Each party, the losing as well as the winning, has a right to the legitimate trial by jury with all its safeguards as understood when the constitution was adopted."

"Trial by jury at the time of the adoption of our constitution, included not only the presence of a jury for the determination of facts, but also the supervision and guidance of a presiding judge who should direct the course of the trial, pass upon questions as to the admissibility of evidence and instruct the jury in matters of law so that the result of the trial might establish the rights of the parties conformably to the law of the land. It included also as a part of the power of the judge, a right, upon application of an aggrieved party, to set aside the verdict if it was rendered by the jury in disregard of their manifest duty or under some grave mistake, which, if not corrected, would work a miscarriage of justice." *Opinion of the Justices,* 207 Mass. 606.

"The terms 'jury' and 'trial by jury,' are, and for ages have been, well known in the language of the law. They were used at the adoption of the constitution, and always, it is believed, before that time, and almost always since, in a single sense. A jury for the trial of a cause was a body of twelve men, described as upright, well qualified and lawful men, disinterested and impartial, not of kin nor personal dependents of either of the parties, having their homes within the jurisdictional limits of the court, drawn and selected by officers free from all bias in favor of or against either party, duly empaneled under the direction of a competent court, sworn to render a true verdict according to the law and the evidence given them; who, after hearing the parties and their evidence, and receiving the instructions of the court relative to the law involved in the trial, and deliberating, when necessary, apart from all extraneous influences, must return their unanimous verdict upon the issue submitted to them." *Opinion of the Justices,* 41 N. H. 550.

The essential thing in the right of trial by jury is the right to have the facts in controversy determined under the direction and superintendence of a judge by twelve impartial jurors having the qualifications and selected in the man-

ner required by law, whose verdict must be unanimous and shall be conclusive, subject to the right of the judge to set it aside if in his opinion it is against the law or the evidence and to grant a new trial. When the issues in a case have been submitted to a jury organized in accordance with these requirements, under the direction of a judge in a court having jurisdiction of the subject matter, and that jury has heard the evidence submitted by the parties, the arguments of counsel and the instructions of the court and has returned a verdict upon which a judgment has been rendered by the court, the right of the parties to a trial by jury has been observed. The constitution does not guarantee a review of that judgment by an appellate court, but if a review is provided for by law it must be such as does not deprive the party of the benefit of trial by jury. If in any way authorized by law the verdict is set aside the parties must be left to their original right to have the facts determined by a jury. They have the same right as on the first trial, and except by a verdict of a jury which is not set aside there can be no final determination of facts.

The plaintiffs in error say that at the time the constitution of 1870 was adopted the parties to a suit at law had the right to have the judgment reviewed and the evidence considered by the Supreme Court, and that to deprive them of that right is a denial of the right of trial by jury as theretofore enjoyed. This right of review was no part of the right of trial by jury guaranteed by the constitution. The process of the common law for reviewing judgments involved no re-examination of any question of fact but concerned itself only with error of law. The granting of a new trial was discretionary with the court. No exception could be taken to the decision of the court and it did not constitute a ground of error. This continued to be the law in this State until the enactment of the law of June 21, 1837, (Laws of 1837, p. 109,) which authorized exception to be taken to the overruling of a motion for a new trial

and the assignment of error on the decision. *Yarber* v. *Chicago and Alton Railway Co.* 235 Ill. 589, cited the decisions in this State. After 1837, therefore, the Supreme Court reviewed the decisions of trial courts denying motions for new trials and in doing so considered the preponderance of the evidence, and that was the practice at the time the present constitution was adopted, in 1870. That constitution confided the judicial powers to one Supreme Court, circuit courts, county courts, justices of the peace and police magistrates, and such courts as might be created by law in and for cities and incorporated towns. Except in cases relating to the revenue, in *mandamus* and *habeas corpus* the jurisdiction given the Supreme Court was appellate, and it was provided that after 1874 Appellate Courts might be created, to which such appeals and writs of error as the General Assembly might provide might be prosecuted from circuit and other courts and from which appeals and writs of error should lie to the Supreme Court in all criminal cases and cases in which a franchise or freehold or the validity of a statute was involved and in such other cases as might be provided by law. Such Appellate Courts were created in 1877, the Practice act was amended, and later there was a complete revision of the Practice act in 1907, and it was further amended in 1909.

We have held that the right of trial by jury which each of our three constitutions has declared shall remain inviolate is the same right, but we have seen that for eighteen years after the adoption of the first constitution no such right of review as the plaintiffs in error now insist upon as their constitutional right was thought of. This right was conferred by statute. If it was within the constitutional power of the legislature to pass that statute in 1837 it did not violate the right of trial by jury, and if a statute granting the power which that statute conferred did not violate the right of trial by jury in 1837, a statute taking that power away in 1909 could not violate the right. The

right of the Appellate Court to review the evidence and grant a new trial is not a constitutional right but is purely statutory and is subject to the control of the legislature.

For the error in admitting the rule in evidence the judgment of the Appellate Court will be reversed and the cause remanded to the circuit court of Cook county.

*Reversed and remanded.*