(No. 22479.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM CALLOPY *et al.* Plaintiffs in Error.

*Opinion filed October 24, 1934.*

DeYoung, J., dissenting.

Benjamin C. Bachrach, and Sol R. Friedman, (Walter Bachrach, Stanley J. Morris, and Adolph Moses, of counsel,) for plaintiffs in error.

Otto Kerner, Attorney General, Thomas J. Courtney, State's Attorney, and J. J. Neiger, (Edward E. Wilson, J. Albert Woll, and Henry E. Seyfarth, of counsel,) for the People.

Mr. Justice Stone delivered the opinion of the court:

Plaintiffs in error, William Callopy and Charles Kelly, were found guilty in the criminal court of Cook county of robbery with a gun. The cause is here on writ of error to review the judgment entered against them.

The court instructed the jury orally as to the law and reviewed the evidence, expressing opinion thereon in oral instructions. This was done over the objection of plaintiffs in error, on the ground that Rule 27 of this court requires that "in criminal cases the court shall give instructions to the jury in accordance with section 67 of the Civil Practice act." This section of the Practice act requires that the trial court instruct the jury only as to the

law of the case and that such instructions be in writing. The validity of Rule 27 presents the only question in this case.

Counsel for the People argue that this rule is in violation of the constitution and the statute. It is not contended that section 67 of the Civil Practice act of 1933 governs instructions to the jury in criminal cases. This Practice act, though repealing the Practice act of 1907, sections 72 and 73 of which required that instructions as to the law, only, be given and in writing, makes no provision for instructions in criminal cases, and no statutory enactment on that subject exists in this State. The specific question before this court, then, is whether it has power, in the absence of statutory enactment upon the subject, to adopt Rule 27. Without going into the question, for it is not here, whether rules of practice prescribed by legislative enactment constitute an encroachment upon inherent powers of the judiciary, as is argued and held by much respectable authority, we have here the question whether this court has power to make a rule governing practice and procedure where no statutory enactment exists.

Section 1 of article 6 of our constitution vests all judicial power, with exceptions noted in the judicial article, not material to this discussion, "in one Supreme Court, circuit courts, county courts, justices of the peace, police magistrates, and such courts as may be created by law in and for cities and incorporated towns," and the question here is whether the power to make rules comes within the power recognized and vested in this court by the constitution. Article 3 of the constitution of 1870 divides all powers of government of this State into "three distinct departments—the legislative, executive and judicial; and no person, or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted." The constitution in the separation of powers

does not clearly define the limits of such powers. This has been frequently recognized by this court. (*People* v. *White,* 334 Ill. 465; *People* v. *Morgan,* 90 id. 558.) Judicial power is vested in the Supreme Court and other courts of this State, but what constitutes judicial power is not defined nor limited by the constitution. It must be said, therefore, that, so far as the provisions or limitations of the constitution are concerned, there is vested in this court all power judicial in its nature. In order to ascertain what is meant by judicial power as vested in the courts of this State by the constitution, recourse must be had to the history of our institutions prior to and at the time of the adoption of the constitution and to the common law as it existed in this country at that time.

It is a matter of general information among those who have read legal history, that the common law of England as it was changed to suit the genius of our institutions, afforded, prior to the adoption of our constitution, the concept of judicial power. So it is necessary to look to the common law as one of the sources of information as to what constitutes judicial power, so far as that question is involved here. Did the rule-making power exist in the courts prior to the adoption of our constitution? At the time of the formation of our government, in the latter part of the 18th century, and for nearly two centuries prior thereto, practice in the Court of King's Bench was governed by a series of general rules and orders made by the judges. As early as 1604, rules so made governed the filing of pleas and the making up of records after trial. The courts of Common Pleas and Exchequer were governed by general rules of procedure made by the judges as early as the 15th and 16th centuries, some of which were in force at the time of the Revolution. (1 Tidd's Practice,—8th ed.—39-50.) Thus judicial power, under the system which we inherited, included the regulation of procedure by rules of the superior courts of England. That system, as from time to

time modified, was followed in this country prior to the adoption of our constitutions and prior to any statutes on the subject. Dean Pound's Regulation of Judicial Procedure, 10 Ill. Law Review, 171.

There has grown up in this country the practice of providing rules of court by legislative enactment. Whether such, where exercised, has superseded courts, thus ousting them of the power, or whether the courts and legislatures have coördinate powers in relation to making rules of practice, is not here and requires no discussion, since there is no rule of practice in this State, other than Rule 27 of this court, touching the question of instructions to juries in criminal cases. In *People* v. *Kelly*, 347 Ill. 221, it was held that the General Assembly has power to enact laws governing judicial practice where they do not unduly infringe upon the inherent powers of the judiciary. The question here specifically is whether, under the facts as they exist in this State, this court had power to enact Rule 27, pertaining to the instructions to juries.

It is said that notwithstanding there is silence in the statutes touching practice as to the method of instructing juries in criminal cases, section 8 of division 13 of the Criminal Code prohibits the making of such rules by this court. It is also argued that Rule 27 contravenes section 5 of article 2 of the constitution, which provides that the "right of trial by jury as heretofore enjoyed, shall remain inviolate." Section 8 of division 13 of the Criminal Code, chapter 38 of Illinois Statutes, provides that "all trials for criminal offenses shall be conducted according to the course of the common law, except when this act points out a different mode," and it is argued that because of these provisions of the constitution and the statute the procedure in force at common law must be followed, and that at common law the judge was empowered to instruct the jury orally as to the law, to sum up the evidence and give his opinion thereon. We come, then, to the question

whether these provisions place a prohibition on the judiciary against the exercise of the rule-making power governing the trial of criminal cases.

The quoted language of section 8 of division 13 of the Criminal Code was first enacted by statute in 1827. (Rev. Laws of 1827, pp. 162, 163.) In *Sinopoli* v. *Chicago Railways Co.* 316 Ill. 609, this court considered the meaning of the language "right of trial by jury as heretofore enjoyed," as the same appears in section 5 of article 2 of the constitution. The ordinance of 1787 was there referred to, and it was pointed out that by section 14 of article 2 of that ordinance it was provided that the inhabitants of the Northwest Territory should always be entitled to the benefits of trial by jury. This right was recognized by the act of Congress of May 7, 1800, which divided that territory, and the act of Congress of February 3, 1807, which again divided the territory, out of the western portion of which Illinois Territory was created. The latter act provided that the inhabitants of Illinois should be entitled to and enjoy all the rights and privileges and advantages granted to the people by the ordinance of 1787. When the constitution of 1818 was adopted the right of jury trial was recognized as existing, and it was declared it should remain inviolate. This court in the *Sinopoli case* said: "This referred to the right of trial by jury as it existed at the time that constitution was adopted in the Territory of Illinois and had previously existed in the State of Virginia and as was guaranteed by the ordinance of 1787 and the acts of Congress constituting the Territories of Indiana and Illinois." In *People* v. *Kelly, supra,* it is pointed out that in not all of the States of the Union was the practice of instructing the jury orally and commenting on the evidence followed. This is likewise shown in *State* v. *Bissonnette,* 83 Conn. 261, 76 Atl. 288. In *Whitelaw's Exr.* v. *Whitelaw,* 83 Va. 40, it was said: "However it may be elsewhere, in Virginia the courts have never indulged in the practice of

making observation to the jury concerning the evidence. It is considered as encroaching too much upon the province of the jury." Again, in *State* v. *Thomason*, 21 W. Va. 756, it was said: "In England, as well as in some of the States of this Union, much more latitude is given the judge in such a case than is given them in Virginia. * * * In some of the States the rule seems to be that a judge has the right to express his opinion to the jury on the weight of the evidence and to comment thereon as much as he deems necessary for the course of justice. * * * A far different rule has always prevailed in Virginia."

In *Penny* v. *Little*, 3 Scam. 301, the question was whether the common law rule of England, that a right to distress for rent must be reserved in a lease, should be followed in this State, there being no statute thereon, or whether the rule as changed in colonial Virginia, which did not require such reservation, should be followed. After reference to the ordinance of 1787, wherein it was provided that the inhabitants of the Northwest Territory "shall always be entitled to the benefits of the judicial proceedings according to the course of the common law," this court said: "Did the parties to this compact intend to adopt the common law as it existed in England before the settlement of America, or did they intend to adopt the common law as it then existed in this territory, modified and improved and adapted to the condition, circumstances and habits of the people by a long course of American legislation and American practice? The mere statement of the proposition furnishes a sufficient answer. It was evidently their intention to secure to the inhabitants of the territory the benefits of the common law as it was then understood and expounded by the courts in America. The inhabitants in this country always claimed the common law as their birthright and at an early period established it as the basis of their jurisprudence. Slight changes and modifications were found necessary, and consequently adopted by com-

mon consent from time to time, to adapt it to our peculiar institutions and the habits and customs of the people. These changes, modifications and customs having for a long course of years been acquiesced in by the people and sanctioned by the courts, have acquired the force of law and become incorporated into and made part of the common law of the land." In *Bulpit* v. *Matthews*, 145 Ill. 345, *Penny* v. *Little*, *supra*, and *Boyer* v. *Sweet*, 3 Scam. 120, are cited with approval as construing the section of the statute adopting the common law of England where applicable and where not changed by the statute, to mean that the common law was adopted and in force "only in cases where that law is applicable to the habits and conditions of our society and in harmony with the genius, spirit and objects of our institutions." To the same effect are *People* v. *Ernst*, 306 Ill. 452, where it is also pointed out that the courts have made many modifications of the common law as changed conditions seemed to require in the interest of justice, and *Komorowski* v. *Boston Store*, 341 Ill. 126, where it was said: "It has long been settled that while this State has adopted the common law, such adoption has extended only to cases where that law is applicable to the habits and condition of our society and in harmony with the genius, spirit and objects of our institutions."

That the common law courts of this country have had power to change the common law relating to rules of practice has long been recognized. As early as 1792, on request for information on the subject by the Attorney General of the United States, the Supreme Court of the United States (2 Dallas, 411,) announced that it considered "the practice of the courts of the King's Bench and Chancery in England as affording outlines for the practice of this court, and that they will from time to time make such alterations therein as circumstances may render necessary." So in the recent case of *Funk* v. *United States*, 78 L. ed. (U. S.) 231, rules of evidence obtaining at common law

were changed by the decision of the court. It was there recognized that as to such rules Congress had the right to change them, but not having done so it was within the power of the court to make such change. So it will be seen that the expression "according to the course of the common law," appearing in section 8 of division 13 of the Criminal Code, is not to be construed as carrying forward the practice of English common law of giving oral instructions and commenting on the evidence, but, on the other hand, the common law referred to at the time of the adoption of section 8 of division 13 of the Criminal Code relates to the common law as it was in force in Virginia. *Sinopoli* v. *Chicago Railways Co. supra.*

In *Lancaster* v. *Waukegan and Southwestern Railway Co.* 132 Ill. 492, it is held that this court has inherent power to institute and prescribe rules of practice, and it is there pointed out that the power is also expressly conferred by statute. That courts have power to make rules of procedure and practice has been frequently announced in this State. *Prindiville* v. *People,* 42 Ill. 217; *Wallbaum* v. *Haskin,* 49 id. 313; *Illinois Central Railroad Co.* v. *Haskins,* 115 id. 300.

The argument is also presented that if the judicial power vested in the courts by section 1 of article 6 of our constitution includes the making of rules of practice, then such rules of practice may be made by all courts of general jurisdiction and this court may not promulgate rules of practice binding upon the circuit or criminal courts. The People, in support of this view, cite *Murray* v. *Whittaker,* 17 Ill. 230, in which the statement is made that this court has no power to make rules of practice for the circuit court. A reading of that case will show that this statement was in nowise necessary to the decision and falls within the class of expressions commonly known as *obiter dictum.* There is, moreover, no discussion there of the power of this court to make rules governing inferior courts,

and the expression in the opinion referred to does not preclude an original examination of the question by this court.

Counsel argue that this court can provide only rules applicable to its own proceedings, and that Rule 27 is for this reason invalid. That inferior courts may adopt rules to facilitate the business before them cannot be denied. On the other hand, it was early recognized in this State that such rules are subject to review by this court. In *Owens* v. *Ranstead,* 22 Ill. 161, it was held that circuit courts have inherent power to make reasonable rules of practice. It was also held that the rule of the circuit court there considered was unreasonable and the judgment was reversed because of it. In *Illinois Central Railroad Co.* v. *Haskins, supra,* it was held that rules of the circuit court, to be valid, must be reasonable. In *Chicago City Railway Co.* v. *Sandusky,* 198 Ill. 400, this court held a certain rule of the circuit court unreasonable and that the court erred in adopting it. However, because no prejudice resulted in that case the judgment was not reversed. Instruction was there given to the circuit court as to making rules. In *People* v. *Jennings,* 312 Ill. 606, it was held that while the criminal court has power to make rules regulating the presentation of instructions both the rules and the enforcement must be reasonable. This court there passed upon the reasonableness of the rule involved. In *Prindiville* v. *People, supra,* the power of this court to pass on rules of procedure of circuit courts was expressly recognized and upheld.

What, then, is the historical argument as to the power of courts of last resort to promulgate rules for and review those made by inferior courts? Again the constitution is silent on this subject both as to definition and delimitation, and we must look again to the history of such practice. If courts of last resort at common law had such power it cannot be doubted that the framers of the judicial article of our own constitution intended to vest that power in the

Supreme Court of this State, for the powers there granted were such as existed under the English common law as modified in America. It has been stated that the reason for fixing fourth year King James I as the date or time prior to which the common law of England should obtain in this State lies in the fact that it was at about this time that settlements began to be made in this country, and so the common law of England as it existed up to that time was imported into the colonies and thereafter followed, either as imported or as changed, as the history of the various colonies and States will illustrate.

As the English common law existed at the time this government came into being, and thereafter, the justices of the King's Bench, while occasionally sitting by commission at *nisi prius,* seldom heard trials of cases in the courts in Westminster but the proceedings and practice of trials were reviewed by the superior court at Westminster, and the practice in the trial courts was regulated by rules made by the superior court at Westminster. (Tidd's Practice, (8th ed.) 44; Dean Pound's Regulation of Judicial Procedure by Rules of Court, 10 Ill. Law Review, 172.) Under our system the courts of last resort of the various States. correspond to the Court of King's Bench of England. It will be seen, therefore, that, historically, superior courts reviewed rules of practice of inferior courts or adopted rules governing such courts. This conclusion as to the power of superior courts to regulate the rules of practice of inferior courts has been recognized in other jurisdictions in this country. *In re Constitutionality of a Wisconsin Statute,* 204 Wis. 501, 236 N. W. 717, was a case where the validity of a statute was attacked on the ground that it conferred upon the Supreme Court authority vested exclusively by the constitution of that State in inferior courts. The act, however, was sustained. In *State* v. *Superior Court of King County,* 148 Wash. 1, 267 Pac. 770, a statute similar to the Wisconsin statute was attacked on the

ground that it was unlawful to confer upon one court the power to make rules for another. In sustaining the act that court there said: "Since this is a case of an appellate court prescribing rules for a trial court, it must at once be manifest that such a power should be placed with a reviewing court, since it is always charged with the duty of determining whether the rulings of the trial court have been such as to operate to the disadvantage of litigants. (*State ex rel. Ross* v. *Call,* 39 Fla. 504, 22 So. 748.) This need has been recognized from the earliest times."

It follows from what has been hereinbefore set out, that the Supreme Court of this State is vested by the constitution with authority to regulate practice and procedure of inferior courts so far as the question here is involved. Section 29 of article 6 of the constitution requires uniformity in practice of courts, and it is in furtherance of such uniformity that rules of practice of general application be made by the Supreme Court.

Counsel for the People point out that by section 2 of the Civil Practice act of 1933 this court is given power to make rules of pleading, practice and procedure for the county, circuit, superior, Appellate and Supreme Courts not inconsistent with the provisions of that act, (Cahill's Stat. 1933, chap. 110, par. 130, p. 2150,) and it is said that as the section gives no authority to this court to make rules of practice for the criminal court of Cook county, and since it is a separate court no such authority exists. Regardless of the fact that the omission of the criminal court of Cook county from the list given in section 2 is without materiality, because the act relating to the criminal court of Cook county provides that the practice in that court shall be the same, so far as may be, as in the circuit court, we have not considered the question from the standpoint of a delegation of authority by the legislature, preferring to determine whether this court by its own inherent powers, may make rules of court binding upon inferior courts. We

are convinced that, viewed both from the historical background of the power of courts of last resort and from the constitutional investiture of power, this court had, and has, power to promulgate Rule 27 of the rules of this court, and that rule is valid.

Rules of court, in so far as valid, have the binding force and effect of law. (*North Avenue Building Ass'n* v. *Huber*, 286 Ill. 375.) It was error for the criminal court to give oral instructions to the jury and to comment on the evidence. For this error the judgment is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

Mr. JUSTICE DEYOUNG, dissenting:

Section 5 of article 2 of the constitution provides that "the right of trial by jury as heretofore enjoyed, shall remain inviolate." The word "heretofore" evidently relates to the past, and to determine the true meaning of the words "the right of trial by jury as heretofore enjoyed," it is necessary to have recourse to the common law of England. (*George* v. *People*, 167 Ill. 447; *Sinopoli* v. *Chicago Railways Co.* 316 id. 609; *Liska* v. *Chicago Railways Co.* 318 id. 570; *People* v. *Bruner*, 343 id. 146, 149). Trial by jury at common law included as an essential attribute the right of the judge to comment on the evidence and to express his opinion on the facts, provided he made it clear to the jury that they were not bound by the expression of his opinion but that all questions of fact were to be freely decided by them. Hale's History of the Common Law of England, (4th ed. 1792,) p. 291; 3 Blackstone's Com. on the Laws of England, (Wendell's ed. 1847,) p. 374; 3 Chitty's Practice, (1st Am. ed. 1836,) p. 913; *Petty* v. *Anderson*, 3 Bing. 170, 171, 173; *Solarte* v. *Melville*, 14 E. C. L. 196, 198; *Belcher* v. *Prittie*, 4 Moore & Scott, 295, 302, 303; *Davidson* v. *Stanley*, 3 Scott's New Reps. 49, 51, 52; *Darby* v. *Ouseley*, 1 H. & N. 1, 3, 13;

*Taylor* v. *Ashton*, 11 M. & W. 401, 417; *Sutton* v. *Sadler*, 91 E. C. L. 86, 99, 104; *Lowenburg Harris & Co.* v. *Woolley*, 25 Can. S. C. 51, 55; *Nudd* v. *Burrows*, 91 U. S. 426, 439; *Vicksburg and Meridian Railroad Co.* v. *Putnam*, 118 id. 545, 553; *St. Louis, Iron Mountain and Southern Railway Co.* v. *Vickers*, 122 id. 360; *United States* v. *Philadelphia and Reading Railroad Co.* 123 id. 113, 116; *Lincoln* v. *Power*, 151 id. 436, 442; *Capital Traction Co.* v. *Hof*, 174 id. 1, 13, 14; *Patton* v. *United States*, 281 id. 276, 288, 290; *Herron* v. *Southern Pacific Co.* 283 id. 91; *New York Firemen's Ins. Co.* v. *Walden*, 12 Johns. (N. Y.) 513, 519; *State* v. *Hummer*, 73 N. J. L. 714, 719; *State* v. *Means*, 95 Me. 364, 368, 369; *Allard* v. *LaPlain*, 125 Me. 44, 45; *Hamilton* v. *People*, 29 Mich. 173, 192; *Jessner* v. *State*, 202 Wis. 184, 191.

Inherent in a trial by jury at the common law is the power of the judge to comment on the evidence and to express his opinion on the facts, provided he assures the jury, notwithstanding the expression of his opinion, of their entire independence and supremacy in the decision of all questions of fact. (*Capital Traction Co.* v. *Hof*, 174 U. S. 1, 13, 14; *Patton* v. *United States*, 281 id. 276, 288). In *Sinopoli* v. *Chicago Railways Co.* 316 Ill. 609, 618, this court relied upon *Capital Traction Co.* v. *Hof, supra,* and quoted therefrom as follows: "Trial by jury in the primary and usual sense of the term at common law and in the American constitutions, is not merely a trial by a jury of twelve men before an officer vested with authority to cause them to be summoned and impaneled, to administer oaths to them and to the constable in charge, and to enter judgment and issue execution on their verdict; but it is a trial by a jury of twelve men, in the presence and under the superintendence of a judge empowered to instruct them on the law and to advise them on the facts, and, except on acquittal of a criminal charge, to set aside their verdict if in his opinion it is against the law or the evidence. This

proposition has been so generally admitted, and so seldom contested, that there has been little occasion for its distinct assertion."

A jury trial in which the judge is deprived of the right to comment on the evidence and to express his opinion on the facts, subject to the limitation stated, is not the jury trial which we inherited. James Bradley Thayer, in his Preliminary Treatise on Evidence at the Common Law, page 188, note, observed: "It is not too much to say of any period, in all English history, that it is impossible to conceive of trial by jury as existing there in a form which would withhold from the jury the assistance of the court in dealing with the facts. Trial by jury, in such a form as that, is not trial by jury in any historic sense of the words. It is not the venerated institution which attracted the praise of Blackstone and of our ancestors, but something novel, modern, and much less to be respected." Likewise Austin W. Scott, in his article entitled "Trial by Jury and the Reform of Civil Procedure," 31 Harvard L. R. 669, 680, 681, said: "At common law it was clearly proper for the judge not merely to state the law and to sum up the evidence, but also to express an opinion on the questions of fact in issue as long as he leaves to the jury the ultimate determination of the issue, and makes it clear that it is not bound to adopt his opinion as its own. Since the judge had this power at common law, he is not deprived of it merely because the right to trial by jury is guaranteed by the constitution. But in many of the States this power has been expressly taken away by constitutional or statutory provisions. It may well be questioned how far the legislature can constitutionally curtail in this way the power of the judge. Trial by jury, in such a form as that, is not trial by jury in any historic sense of the words."

To sustain rule 27 of this court the opinion of the majority has recourse to the common law as interpreted in the State of Virginia at the time of the adoption of our

first State constitution. Early in the history of this State, the General Assembly enacted that the common law of England, so far as it is applicable and of a general nature, and, with three exceptions not material to the present purpose, all acts of the British Parliament made in aid of, and to supply the defects of the common law, prior to the fourth year of James the First, and which are of a general nature and not local to that kingdom, shall be the rule of decision, and shall be considered as of full force until repealed by legislative authority. It is admitted that no legislative enactment of this State affects the question under consideration. No statute could eliminate an essential attribute of a jury trial consitutionally guaranteed. Recourse to the common law as declared in Virginia is therefore unavailing.

The right or power of the judge to aid the jury by commenting on the evidence and expressing his opinion on the facts, "when in his judgment the due administration of justice requires it," imposes a duty of such gravity, that, as the Supreme Court of the United States said in *Nudd* v. *Burrows,* 91 U. S. 426, at page 439, "There is none more important resting upon those who preside at jury trials." Manifestly, to deny the judge's right or power to assist the jury in the determination of issues of fact is to deprive him of one of his most important common law functions and inevitably effects a fundamental change in a trial by jury.

Rule 27 of this court completely silences the trial judge with respect to the evidence in a criminal case. It is a deprivation of an essential attribute of a jury trial as known to the common law and, in my opinion, violates section 5 of article 2 of the constitution. Accordingly, I respectfully dissent from the opinion and judgment of the court.