THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL BRUMFIELD, Defendant-Appellant.

Third District   No. 76-226

Opinion filed August 26, 1977.

638

Robert Agostinelli and Mark W. Burkhalter, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (Ruth Anne Perley, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

Defendant Michael Brumfield was convicted of burglary after a jury trial in the Circuit Court of Will County and received a two to ten year

prison term. The sole issue on appeal is whether the trial court committed reversible error by refusing defense counsel the opportunity to directly examine prospective jurors.

The trial court informed the parties prior to selecting a jury that it would not permit them to directly question prospective jurors based on its authority under amended Supreme Court Rule 234 (Ill. Rev. Stat. 1975, ch. 110A, par. 234). The record in this case does not reveal that counsel for the defendant submitted any questions to the judge for him to ask the jurors, nor does the record reveal whether or not the defendant exhausted his peremptory challenges. Amended Rule 234, which became effective on July 1, 1975, states that:

> "The court shall conduct the voir dire examination of prospective jurors by putting to them questions it thinks appropriate touching their qualifications to serve as jurors in the case on trial. The court may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate, or may permit the parties to supplement the examination by such direct inquiry as the court deems proper. Questions shall not directly or indirectly concern matters of law or instructions."

Rule 234 is made applicable to criminal cases by Supreme Court Rule 431 (Ill. Rev. Stat. 1975, ch. 110A, par. 431).

Defense counsel asserted a right to directly examine jurors under amended section 115—4(f) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 115—4(f)), but his motion was denied. Amended section 115—4(f), which became effective on October 1, 1975, provides in part that:

> "* * * Each opposing counsel has the right to conduct his own voir dire examination of each prospective juror for the purpose of determining such juror's qualifications, bias and prejudice, or freedom therefrom."

Since it is evident that a conflict exists between Rule 234 and the statute, the issue thus presented raises some interesting questions about the respective constitutional powers of the legislature and judiciary to regulate trial practice. The defendant contends that amended section 115—4(f) reflects a proper exercise of legislative power which supersedes the conflicting supreme court rule. The State, on the other hand, maintains that section 115—4(f) unconstitutionally infringes on the courts' inherent rule-making authority. Before discussing this separation of powers question, however, we think our initial inquiry ought to be whether or not there is an independent constitutional right to directly *voir dire* prospective jurors in a criminal case. For if such right exists then Supreme Court Rule 234 is, of necessity, unconstitutional. *Diversey Liquidating Corp. v. Neunkirchen* (1939), 370 Ill. 523, 19 N.E.2d 363.

■■ The right to a jury trial as guaranteed by the 1970 constitution is exactly the same right as was guaranteed by the previous 1870, 1848 and 1818 Illinois Constitutions. The Illinois Constitution of 1970 contains two sections concerning jury trials. Article I, section 13 (Ill. Const. 1970, art. I, §13), states that, "The right of trial by jury as heretofore enjoyed shall remain inviolate." Except for punctuation changes this provision is the same as article II, section 5, of the 1870 constitution. (Ill. Const. 1870, art. II, §5.) The provision should therefore be interpreted as before. *Ford v. Environmental Protection Agency* (3d Dist. 1973), 9 Ill. App. 3d 711, 292 N.E.2d 540.

In *People v. Kolep* (1963), 29 Ill. 2d 116, 193 N.E.2d 753, the court held that this provision, which is applicable to both civil and criminal cases, guarantees a criminal defendant the right to have the facts in controversy determined by 12 impartial jurors. While an impartial jury is undoubtedly a constitutional prerequisite to any plan regulating *voir dire* examination, article I, section 13, does not necessarily bolster the defendant's position. In fact, as we will later discuss, the respective positions of the State and defendant in this case reflect the on-going public debate over the best method of selecting jurors.

We also doubt whether the words "as heretofore enjoyed" contained in this section offer any particular help to defendant's case. These words have been viewed as restricting the class of cases where a right to jury trial is available (*Seifert v. Standard Paving Co.* (1976), 64 Ill. 2d 109, 355 N.E.2d 537; *Ford v. Environmental Protection Agency* (3d Dist. 1973, 9 Ill. App. 3d 711, 292 N.E.2d 540), and the substantive right guaranteed by this provision should be defined by examining the English common law. (*Grace v. Howlett* (1972), 51 Ill. 2d 478, 283 N.E.2d 474.) In England, however, the practice has always been that a *voir dire* examination may be conducted only after a challenge has been exercised and in support of that challenge. See R. Millar, *Civil Procedure of the Trial Court in Historical Perspective* 289-291 (1952).

Furthermore, the Bill of Rights Committee, in reaffirming the principles embodied in article I, section 13, was primarily concerned with the size of the jury, not the method of its selection. (See 6 Record of Proceedings, Sixth Illinois Constitutional Convention 26-28 (hereinafter cited as Proceedings).) Consequently there is nothing to indicate that article I, section 13, was ever intended to confer upon litigants a right to directly question prospective jurors.

We have also closely examined article I, section 8 (Ill. Const. 1970, art. I, §8), concerning rights after indictment and have reached a similar conclusion with respect to it. The right to an impartial jury is so basic that the constitutional draftsmen expressly referred to it in article I, section 8. However, the mere fact that this guarantee is spelled out in article I, section 8, does not, in our opinion, resolve the related question of whether

the constitution guarantees parties a right to directly examine prospective jurors. Again the record of the convention is silent with respect to this question. See 6 Proceedings 42.

General principles of statutory construction also apply in the construction of constitutional provisions. (*Johnson v. State Electoral Board* (1972), 53 Ill. 2d 256, 290 N.E.2d 886.) In construing statutes, Federal authority should be consulted where there is a lack of Illinois precedent. (*Fitzgerald v. Chicago Title & Trust Co.* (1st Dist. 1977), 46 Ill. App. 3d 526, 361 N.E.2d 94.) Supreme Court Rule 234, while permitting the trial judge to allow direct examination of prospective jurors by counsel "also introduces the alternative, embodied in the comparable federal rule, of requiring the parties to furnish their questions to the trial judge." (Ill. Ann. Stat., ch. 110A, par. 234, Council Commentary, at 104 (Smith-Hurd Supp. 1977).) Given the similarities between the Illinois and Federal rules and the virtual dearth of Illinois cases on the question of whether there is a constitutional right to direct *voir dire* examination, we have not hesitated to consult appropriate Federal cases.

Our examination of Federal law indicates that the courts have consistently rebuffed constitutional challenges to the method of examining the venire utilized by the judge in our case. (See *United States v. Duke* (4th Cir. 1969), 409 F.2d 669; *United States v. Anderson* (8th Cir. 1970), 433 F.2d 856; *Perry v. Allegheny Airlines, Inc.* (2d Cir. 1974), 489 F.2d 1349; *United States v. Liddy* (D.C. Cir. 1974), 509 F.2d 428.) By upholding the constitutionality of this method of jury selection in both criminal and civil cases (see Fed. R. Crim. P. 24(a) and Fed. R. Civ. P. 47(a), respectively) these decisions implicitly deny the existence of a constitutional guarantee to directly examine prospective jurors. Thus in *United States v. Liddy* the court held that the action of the trial judge in molding the method of *voir dire* examination would not be reversed absent an abuse of discretion which substantially prejudices the defendant.

We therefore hold that there is no constitutional right to direct examination of prospective jurors. In reaching this conclusion we are aware that some commentators have argued that the Illinois cases of *Donovan v. People* (1891), 139 Ill. 412, 28 N.E. 964, and *People v. Lobb* (1959), 17 Ill. 2d 287, 161 N.E.2d 325, resolve this issue in favor of the existence of a constitutional right to direct *voir dire* examination. However, we do not share this view. In *Donovan v. People* the court reversed a defendant's grand larceny conviction because the trial judge refused to let her attorney directly question the venire. This decision rested on the rule of *Stephens v. People* (1878), 38 Mich. 739, but it is noteworthy that Michigan subsequently repudiated the *Stevens* rule in favor of a method similar to the one adopted by the trial court in our case. More important still with respect to our holding is the court's statement

that, "We are aware of the contrary holding by courts of eminent respectability, *but under our statute and the uniform practice in our courts* we can not sanction the practice adopted in this case." (Emphasis added.) (139 Ill. 412, 418, 28 N.E. 964, 966.) In our view this language indicates that the so-called Donovan rule was based on a statutory rather than constitututional recognition of a right to direct *voir dire*.

In *People v. Lobb* (1959), 17 Ill. 2d 287, 161 N.E.2d 325, the defendant unsuccessfully challenged the constitutionality of former Supreme Court Rule 24—1 (now Rule 234). Like the present rule, Rule 24—1 required the trial judge to initiate the *voir dire* examination. Unlike amended Rule 234, however, Rule 24—1 provided that the parties, "shall be allowed a reasonable opportunity to supplement the examination * * *." While upholding Rule 24—1 as a reasonable implementation of the constitutional guarantees surrounding jury trials, the court noted that, "the selection of an impartial jury does not require that the parties themselves be permitted to examine [prospective jurors] * * *." (17 Ill. 2d 287, 301, 161 N.E.2d 325, 333.) We think this language supports our position that the constitution does not guarantee a right to directly *voir dire* the venire.

We turn then to consideration of the separation of powers question mentioned earlier in this opinion. Article II, section 1 of the 1970 Illinois Constitution provides that:

"The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another."

The doctrine of separation of powers prevents the whole power of two or more branches of government from being lodged in a single branch. *In re Estate of Barker* (1976), 63 Ill. 2d 113, 345 N.E.2d 484.

■■ However, because the changes in this section are merely stylistic (6 Proceedings 566), the principle of overlapping powers incorporated into the 1818 Illinois Constitution (see *Field v. People ex rel. McClernand* (1832), 3 Ill. (2 Scam.) 79) is continued in the present document. (2 Proceedings 1067; *City of Waukegan v. Pollution Control Board* (1974), 57 Ill. 2d 170, 311 N.E.2d 146.) Utilizing this overlapping principle the Illinois Supreme Court has upheld the General Assembly's authority to fix mandatory retirement ages for judges while preserving its own power to prescribe standards for judicial conduct. (*Cusack v. Howlett* (1969), 44 Ill. 2d 233, 254 N.E.2d 506.) Similarly the court has ruled that the separation of powers doctrine is not violated simply because an administrative agency authorized to issue and revoke licenses exercises a quasi-judicial power. *City of Waukegan v. Pollution Control Board.*

Yet the general principle of overlapping power is not without its exceptions. In *People v. Bruner* (1931), 343 Ill. 146, 157, 175 N.E. 400, 405, for example, the court explained that, "If the power is judicial in its nature, it necessarily follows that the legislature is expressly prohibited from exercising it."

Still courts have recognized that the dividing line between judicial and legislative power is difficult to draw. (*People v. Reiner* (1955), 6 Ill. 2d 337, 129 N.E.2d 159; *Dodge v. Cole* (1881), 97 Ill. 338.) The rule of *People v. Bruner*, for example, is almost a self-evident proposition, but applying it in a particular context is difficult because the constitution does not define "judicial power."

■■ Like the case of the words "as heretofore enjoyed," we can only define "judicial power" by looking to the history of our institutions and to the common law. (*Grace v. Howlett* (1972), 51 Ill. 2d 478, 283 N.E.2d 474.) At common law courts possessed inherent power to institute and prescribe rules of procedure. (*People v. Callopy* (1934), 358 Ill. 11, 192 N.E. 634; *Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 105 N.E.2d 713.) The 1870 Illinois Constitution gave the courts all powers necessary for complete performance of the judicial function (*People v. Spegal* (1955), 5 Ill. 2d 211, 125 N.E.2d 468; *People ex rel. Illinois State Bar Association v. Peoples Stock Yards State Bank* (1931), 344 Ill. 462, 176 N.E. 901), and the present constitution continues this practice. See 6 Proceedings 807; *Wright v. Central Du Page Hospital Association* (1976), 63 Ill. 2d 313, 347 N.E.2d 736.

■■ Furthermore, when the General Assembly passed the Civil Practice Act in 1933 it granted the Illinois Supreme Court the power to make rules of pleading, practice and procedure. (Ill. Rev. Stat. 1975, ch. 110, par. 2.) This present statute has made it clear that the power of the court to make rules governing practice, pleading and procedure is one which is inherent in the court rather than one which rests in legislative grant. *Cf. People v. Callopy* (1934), 358 Ill. 11, 192 N.E. 634; *Biggs v. Spader* (1951), 411 Ill. 42, 103 N.E.2d 104, *cert. denied,* 343 U.S. 956, 96 L. Ed. 1356, 72 S. Ct. 1051 (1952).

■■ Assuming that Supreme Court Rule 234 reflects the courts' inherent rule-making power, however, does not dispose of the issue of whether it is superseded by section 115—4(f) because the new constitution apparently recognizes a concurrent judicial and legislative rule-making power. (6 Proceedings 825-26.) Although the Illinois Supreme Court has also recognized the legislature's concurrent power (*People v. Capoldi* (1967), 37 Ill. 2d 11, 225 N.E.2d 634), it has not hesitated to strike down statutes which conflict with its rules in appropriate cases. *E.g., People ex rel. Stamos v. Jones* (1968), 40 Ill. 2d 62, 237 N.E.2d 495; *Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 105 N.E.2d 713.

■■ In *People ex rel. Stamos v. Jones* the court held that the legislature cannot constitutionally interfere with court rules unless the constitution expressly subjects such rules "to law hereafter enacted." (40 Ill. 2d 62, 66, 237 N.E.2d 495, 497; accord, *People v. Taylor* (1971), 50 Ill. 2d 136, 277 N.E.2d 878.) Under article VI, section 16, of the 1970 Illinois Constitution

(Ill. Const. 1970, art. VI, §16), the "General administrative and supervisory authority over all courts is vested in the Supreme Court and shall be exercised by the Chief Justice in accordance with its rules." Section 16 does not alter the powers of the judicial and legislative branches with respect to rule making, but the words "and supervisory" were added to this section in order to strengthen the concept of a centrally supervised court system. (Ill. Ann. Stat., Const., art. VI, §16, Constitutional Commentary, at 527 (Smith-Hurd 1971).) It is evident then that if a court rule is primarily administrative in character the legislature lacks constitutional authority to modify or defeat it. We have therefore examined the background and purpose of Supreme Court Rule 234 and of the comparable Federal rules of civil and criminal procedure (Fed. R. Civ. P. 47(a) and Fed. R. Crim. P. 24(a)) to determine whether its function is primarily administrative.

Commentators generally agree that the sole purpose of the *voir dire* examination is to select an impartial jury through the intelligent use of challenges. (L. Goodman, *Should California Adopt Federal Civil Procedure?*, 40 Calif. L. Rev. 184 (1952); Note, *Selection of Jurors by Voir Dire Examination and Challenge*, 58 Yale L.J. 638 (1949); P. Tone, *New Supreme Court Rule 24—1: How it Works*, 47 Ill. B. J. 140 (1958).) Early in this century the almost universal practice was to allow counsel to conduct the entire jury examination. However, this method was often abused by attorneys who used the opportunity of directly questioning jurors to indoctrinate and ingratiate themselves to the venire, frequently at the expense of achieving impartiality. Such abuses inexorably delayed jury selection and increased the costs of trial. Amid what one court later termed "a scandal" (*Falter v. United States* (2d Cir. 1928), 23 F. 2d 420, 426), came cries for reform. *E.g.*, Perkins, *Some Needed Reforms in the Method of Selecting Juries*, 13 Mich. L. Rev. 391 (1915).

The argument over who is best qualified to conduct the *voir dire* has raged for years. Yet is is undisputable that the purpose of *voir dire* is the selection of an impartial jury. And we have no doubt that sound judicial administration is best served by making *voir dire* examination primarily the function of the judge, as does amended Rule 234. The abuses and waste of time inherent in the former practice of leaving the examination to the lawyers are known to all trial lawyers. The response of Federal courts to the abuses of counsel conducted *voir dire*, based on a recommendation of the Senior Circuit Judges of the United States in October, 1924, was to place responsibility for the conduct of the *voir dire* with the trial judge. A number of Federal courts adopted rules to this effect and the practice was sustained in several decisions. (*E.g., Falter v. United States* (2d Cir. 1928), 23 F.2d 420.) This practice became more or less uniform with the adoption of Federal Rule 47(a) in 1938.

The evils of delay, ingratiation and indoctrination were apparently less

pronounced in Illinois, for counsel conducted *voir dire* continued to be the rule here until Supreme Court Rule 24—1 was adopted in 1958. As previously mentioned, Rule 24—1 combines the methods of court and counsel conducted *voir dire*. Whether due to the fact the rule continued the practice of allowing lawyers to directly examine the venire or due to its uneven application by the courts, Rule 24—1 by and large failed to speed up the jury selection process or remedy the other problems it was supposed to solve. J. Carr, *Voir Dire Examination of Jurors: An appraisal by an Attorney*, 1963 U. Ill. L. F. 653; R. English, *Of Course the British Court System is Better than Ours—Or is it?*, 53 Chi. Bar. Rec. 342, 346 (1972).

Supreme Court Rule 234 became effective on January 1, 1967. Comparison of Rule 234 with former Rule 24—1 indicates that except for slight stylistic changes the two rules are almost identical. (See *People v. Etten* (1st Dist. 1975), 29 Ill. App. 3d 842, 331 N.E.2d 270, *cert. denied*, 425 U.S. 994, 48 L. Ed. 2d 818, 96 S. Ct. 2207 (1976).) Not surprisingly, then Rule 234 also failed to achieve the ends it had been designed to accomplish.

Recognizing this fact, the judges of this State considered changes in the rule in the latter part of 1974. See generally Illinois Judicial Conference, Report of the Study Committee on Jury Utilitization and Selection (1974).

We think the background and purpose of Rule 234 clearly indicate that it was designed as an administrative tool for expediting jury trials. Our conclusion is also influenced by the fact that article VI, section 17 of the 1970 Illinois Constitution directs the judicial conference "to consider the work of the courts and to suggest improvement in the administration of justice * * *." Amended Rule 234, of course, is a product of the conference.

■■ ■ It is the undisputed duty of the court to protect its judicial powers from encroachment by legislative enactments, and thus preserve an independent judicial department. (*Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 105 N.E.2d 713; *People ex rel. County Collector v. Jeri, Ltd.* (1968), 40 Ill. 2d 293, 239 N.E.2d 777.) Consequently, we hold that section 115—4(f) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 115—4(f)) unduly infringes upon the judicial power of the courts in violation of article II, section 1 of the 1970 Illinois Constitution, and is therefore void. Accordingly, the position of the defendant on this appeal is without merit.

The judgment of the Circuit Court of Will County is therefore affirmed.

Affirmed.

ALLOY and BARRY, JJ., concur.