C. M. HERNDON v. THE IMPERIAL FIRE INSURANCE COMPANY.

*Petition to Rehear—Practice in The Supreme Court—Constitution—Code.*

1. The Supreme Court, since the Constitution of 1868, is an organic branch of the State government, and not bound by acts of the Legislature undertaking to regulate its rules of practice.

2. Section 966 of *The Code* (enacted before the present Constitution), cannot be allowed to give the losing party an absolute right to a rehearing, and to have his petition considered by the whole Court contrary to its rule governing the practice in such cases.

3. Discussion of the practice in the Supreme Court and its powers under the old and new Constitution, by CLARK, J,

This is a MOTION by defendant to rehear this cause, argued before the Court *in banc*, upon the ground that Rule 53, which requires the endorsement of a member of the Court before a rehearing is granted, is contrary to law.

*Messrs. G. V. Strong* and *J. W. Hinsdale*, for defendant petitioner.

*Mr. W. W. Fuller*, contra.

CLARK, J.: The moving party contends that *The Code*, § 966, gives the losing party an absolute right to file a petition to rehear, and that it must be considered by the whole Court. If it be conceded that this section is conclusive and bears the construction placed upon it, the mover is out of Court on his own showing, as this motion was not made in vacation, nor within the first twenty days of this term. But passing by that vital objection, if "filing" within the meaning of that statute is to be construed as meaning that every petition to rehear must perforce be considered by every member of the Court, it would virtually almost double the business of this Court. We pay counsel who appear here the compliment of believing their contention sound and just when they present a cause for our decision. If, when this Court comes to a different conclusion, the statute gives the losing party a right to file a petition to rehear, and to have that petition considered by the Court as a body, and the Court can in no way restrict such right, there would be few cases in which such petitions would not be filed. Counsel in the argument generously conceded that though the entire Court must consider such petition, it would not necessarily be compelled to hear argument. But we fail to see the logic of that concession, if the filing of a petition and the right to have it considered by the whole Court belongs by statutory right to everyone who loses a case in this Court.

Section 966 of *The Code* was enacted long prior to the Constitution of 1868, which made a vital change in the powers of this Court, as has been pointed out in several decisions of this Court, and reaffirmed recently in *Horton* v. *Green*, 104 N. C., 400. The Supreme Court was originally created in 1818 by legislative enactment, and remained till 1868, as to its powers, its duties, its rules, even as to its very existence, subject to control by the Legislature, which could abolish or modify it since it had created it. By the Constitution of 1868, Article IV, the Supreme Court was first established as

111—25

an organic body and its powers defined. In Article I, section 8, it is provided "the legislative, executive and *supreme judicial powers* of the government ought to be forever separate and distinct from each other." Article IV, section 12 of the Constitution provides that the "General Assembly may regulate by law, if necessary, the methods of proceeding in the exercise of their powers of all the Courts *below the Supreme Court,* so far as the same may be done without conflict with other provisions of this Constitution."

As was said by this Court in *Horton* v. *Green, supra,* when construing these sections, "to the judgment and experience of this Court alone is delegated by the organic law the power of establishing rules to regulate its procedure and provide for the dispatch of business coming before it."

When the first Republican Constitution of North Carolina was framed at Halifax, in 1776, a large element viewed with distrust the then untried experiment of a government of the people by themselves. As a consequence, the whole government was vested in a Legislature to whose supposed superior wisdom was confided the selection of the entire executive and judicial departments, and as a further check, one branch of the Legislature was chosen, not by the people at large, but by those possessed of a certain amount of landed property.

With the progress of ideas, the Constitution of 1835 entrusted the election of the Governor to the people. A subsequent amendment gave the Senate to the popular vote. The Constitution of 1868 gave the direct election of the judiciary and also of the heads of the several executive departments to the people without the intermediary of a legislative selection, and made the three departments of the government co-ordinate, but independent of each other. Each of the three is now equally based upon the broad basis of the popular will.

This brief review of the development of popular government in North Carolina is not inappropriate. The members of this Court receive, like the Legislature and the Executive, their mandate from the people. The same organic law which gives the Legislature power to make rules and regulations for the orderly and regular dispatch of business in its sessions, free from the control or interference of the Executive or of this Court, gives the same power over its own procedure, to this Court, free from interference from either of the other co-ordinate branches of government. Neither body has shown any disposition to encroach upon the constitutional prerogatives of this Court. But as the right to do so has been raised by the argument in this case, it is due to the dignity of the Court to pass upon the claim to legislative interference put forward by counsel.

Section 966 of *The Code* was originally adopted, as already stated, under the old Constitution, when the Legislature both created the Court and passed rules for its procedure. It was brought forward in *The Code* probably by inadvertence, since now the Court owes its existence to the Constitution, and its rules are prescribed by itself. But so unobjectionable was this section in itself, that the new Court, though not recognizing legislative power to enact it, adopted it *verbatim*, and it now stands as Rule 52 of the Court. That it has never borne the construction placed upon it by counsel is shown by the fact that, even under the old Constitution the Court did restrict the right of rehearing almost from the very beginning by refusing to reconsider any case unless the petition was concurred in by two other members of the bar of this Court who had no interest in the cause, and who should certify that they had carefully examined the whole case, and that there was error in the opinion of the Court. As in those early days the bar of the Supreme Court consisted of a very few lawyers, mostly gentlemen of long experience, this served as a reasonable restriction. With the opening of railroads

and the increase of the Supreme Court bar, it became less difficult to procure the signatures of two additional counsel. The Court, in *Watson* v. *Dodd*, 72 N. C., 240, referred to the readiness with which "two amiable and accommodating gentlemen" would certify that there was error in an opinion which had cost the five members of the Court hours of thought and conscientious labor to elaborate. But notwithstanding this, and many similar reminders, the tide of applications to rehear swelled so rapidly that in the 92 Reports, 805 (February, 1885), years before any of the present members of the Court occupied a seat on this bench, it became necessary to adopt the rule now complained of, "that no petition to rehear shall be docketed until one of the Justices of the Supreme Court shall have endorsed thereon that in his opinion the case is a proper one to be heard." This rule has since been modified very properly by requiring that the Justice who makes such certificate shall be one of those who concurred in the opinion sought to be reheard, and giving the petitioner the right to direct the Clerk to which Justice to forward his application for a rehearing. Our attention was also called on the argument to the fact that the word "docketed" in Rule 53 now reads "filed," but construed with the context the meaning is the same.

Construing Rules 52 and 53 together, we understand that now, as always, anyone dissatisfied with a decision of this Court can, at the same term, or in vacation, or within the first twenty days of the next term, under Rule 52, "*file with the Clerk*" a petition to rehear. Formerly, before that petition could be considered at all by the Court, the certificate of two disinterested counsel was required. That proving insufficient, in 1885 the present rule was adopted, requiring, in addition thereto, the certificate of one of the Justices of the Court. When that is obtained, the case, under Rule 53, is "*filed for hearing*" or docketed. The restriction is a reasonable one, since, if the petitioner, making his own selection of the

Justice, cannot present a case which will satisfy one member of the Court upon an *ex parte* brief that the case is a proper one, even to be reargued, he will hardly persuade the full bench, when there is opposing counsel, that there was error in the former opinion.

These restrictions upon an unlimited freedom of rehearing, have been proven by experience to be absolutely necessary. To five men is committed in the last resort the litigation of a State whose population already aggregates not far from two millions of people and whose numbers, whose wealth, and consequently whose volume of litigation, will steadily increase. If the losing party in this Court can, at his unrestricted will, command the consideration of his application for a second hearing by the entire bench, as is contended on the argument in this case, it will not be long before a first hearing in other cases equally deserving will become almost an impossibility. Other suitors are entitled to a prompt hearing, and in justice to them—and not for the ease and comfort of the Court—we must adhere to the rule conceived and adopted by the prudent, able and conservative Judges— SMITH, ASHE and MERRIMON—who composed this Court in 1885, that " no case can be filed (for rehearing) till endorsed by a Justice of the Court as a suitable and fit one to be reheard." Errors are committed by all Courts but they are by no means so numerous and alarming as they must seem to counsel who lose their causes. They must reflect that they have against them the opinion of the opposite counsel and of the five disinterested lawyers who have heard the cause debated (or at least a majority of them) The Court cannot spend its time in winnowing " chopped over straw," when there is always a vast mass of new cases demanding prompt as well as careful consideration.

The Constitution guarantees a right of appeal, but that does not give a right to a second hearing, any more than it does the right to a third or a tenth hearing. The petitioner

has had his day in Court. He is entitled by constitutional right to no more. When the Court is satisfied by the certificate of two disinterested counsel, and by the further certificate of a member of the Court who concurred in the opinion, and who has been selected by the petitioner to examine into his application, that the cause is a fit one to' be reargued, it will defer the argument of appeals which, as yet, have had no hearing, and give time and place again to the argument of one which has already been heard and determined. But it is only under such circumstances that this will be done. This is due to the party who has gained the cause, and who has a reasonable claim to rely upon the calm and deliberate judgment of a Court of last resort as a finality. It is due to the counsel and suitors in appeals yet unheard, who should not be postponed till other causes are argued again and again. And it is due also to the dignity of the Court that its decisions should not be lightly called in question by every loser of a case at its bar. To the calm, unbiased judgment of the Court must be left the determination of what restrictions justice to others and to the applicant requires should be placed upon the grant of a rehearing. It knows none better now than the one in force in nearly, if not all, appellate Courts of requiring the endorsement of the application by one of its own members.

Petition Dismissed.