JORDAN ET AL., APPELLANTS, *v.* ANDRUS ET AL., RESPONDENTS.

(No. 1,705.)

ON MOTION TO DISMISS APPEAL.

(Submitted October 28, 1901.   Decided October 28, 1901.)

*Appeal and Error—Transcript—Printing—Rules of Court— Constitutional Law — Judicial Department — Legislative Regulation.*

Under Constitution, Art. VIII, Secs. 2, 3, 15, giving the supreme court appellate jurisdiction of all cases in law and equity, subject to such limitations and regulations as may be prescribed by law, and giving the legislature power to prescribe regulations and limitations, and declaring that writs of error and appeals shall be allowed from the decisions of the district court to the supreme court, under such regulations as may be prescribed by law, the legislature had no power to regulate the physical form of the pleadings and instruments to be filed with the supreme court; and the act of March 9, 1901, known as "Senate Bill 101," providing that transcripts on appeal may be printed or typewritten, at the election of the appellant, is invalid.

*Appeal from District Court, Custer County; C. H. Loud, Judge.*

PROCEEDINGS by W. A. Jordan and others against W. W. Andrus and others. From a judgment in defendants' favor, plaintiffs appeal. Dismissed.

*Messrs. Strevell & Porter* and *Mr. Geo. W. Farr,* for Appellants.

*Mr. G. W. Myers* and *Mr. Sidney Sanner,* for Respondents.

MR. JUSTICE MILBURN delivered the opinion of the court.

This cause is before the court upon the motion of the respondents to dismiss the appeal upon the grounds: "(1) That the transcript on appeal herein by the said appellants is not printed, nor made upon paper ten inches long by seven inches wide, nor are the typewritten pages thereof seven and one-half inches long by three and one-half inches wide, nor is said transcript otherwise or at all made in conformity with Subdivision 1 of Rule VI of this court. (2) That said transcript on appeal is not in conformity with Subdivision 1 of Rule VII of this court in this: that the cover thereof does not state the title of this court or of said cause, or otherwise or at all conform to said rule in relation to covers in transcripts on appeal. (3) That said transcript is made out in a slovenly manner. * * * (4) That the order of the district court from which this appeal is taken or sought to be taken, to-wit, the order made and entered July 16, 1901, dissolving and vacating the temporary restraining order theretofore made in this action, is not an appealable order, within the meaning of Sections 1722 and 1723 of the Code of Civil Procedure, as amended February 28, 1899, and an appeal does not lie from said order to this court."

The transcipt is typewritten. Subdivision 1 of Rule VI requires transcripts to be printed. Is the rule abrogated and annulled by the Act of the legislature approved March 9, 1901, known as "Senate Bill 101" (Laws of 1901, page 161), and providing that all transcripts, documents and papers filed in

the supreme court in connection with any appeal taken and mentioned in the chapter in the Code of Civil Procedure upon appeals in civil actions may be printed or typewritten, at the election of the appellant? If the Act is within the powers of the legislature, then the rule of this court opposed to it is null, and the motion to dismiss the appeal must be denied, so far as the first ground is concerned.

This particular question is not treated of in any opinion of any court to which we have been referred, or by any of the learned writers, many of whose works we have examined.

The constitution of this state vests the powers of government in three different and distinct departments,—the legislative, the executive, and the judicial. It is not necessary to quote from the multitudinous authorities supporting the proposition that it is not lawful for any department, or officer thereof, to interfere with the power of any other department. It is sufficient to refer to the constitution (Article IV, Sec. 1) and to *State ex rel. State Pub. Co.* v. *Smith,* 23 Mont. 44, 57 Pac. 449.

Section 3 of Article VIII of the Constitution of this state declares that "the appellate jurisdiction of the supreme court shall extend to all cases at law and in equity, subject, however, to such limitations and regulations as may be prescribed by law." Section 2 of the same article also gives the legislature power to subject the appellate jurisdiction to "regulations" and "limitations;" and Section 15 of the article is as follows: "Writs of error and appeals shall be allowed from the decisions of the said district courts to the supreme court under such regulations as may be prescribed by law."

What is meant by "limitations" and "regulations?" The words in their ordinary sense are easily understood to mean what they in legal parlance, respectively, imply, to-wit, restrictions of power and rules of conduct or proceeding. The matter of this rule need not be treated as in any wise affected by the power of the legislature to establish limitations to jurisdiction. Its power to make rules of conduct or proceeding (that is, rules of procedure and practice) is all that can be considered on this

motion. The question is, has the legislature the authority under the constitution, after having enacted a Code of Civil Procedure, including a chapter establishing the procedure and practice in the matter of appeals to the supreme court, to dictate to the supreme court as to the very physical substance of the pleadings and other instruments which it may be necessary for the justices to handle, read and study in their deliberations after the cause is submitted?

What style of typewriter would the legislature permit the appellant to use? What size of type? How close shall the lines be? How thick is to be the paper? How small or large shall the pages be? What sort of ink shall the operator use in preparing the papers,—record or copying? How skillful in the use of the machine shall the typewriting operator be? If the legislature has the power to dictate as to carbon copies of transcripts to be used on appeal, why has not the legislature the power, under the constitution, to force the justices to read, study and handle, during its deliberations, sometimes extending through a long period of time, papers prepared upon tissue paper, with machines making faint impressions from small type, and with such ink or carbon that they will be annoying, inconvenient, untidy and soon indecipherable? Could a regulation such as that last above suggested be within the powers of the legislature to regulate the procedure and practice on appeal to the supreme court? If not, then we cannot see how any regulation of any character dictating to our department of the state government what kind of ink or other material substance shall be used, or how the ink shall be put on, in the manufacturing of the pleadings and papers to be handled and perused by the justices, can be valid. Might not the legislature go farther, and permit the appellant to use a pen instead of a typewriter? Power to dictate to this department of government as to the use of typewritten transcripts includes the right to order us to struggle through a mass of penwritten transcripts and all other records and papers, including briefs.

Wherein would such acts be within the power of the legis-

lature, as a "regulation" of the appellate jurisdiction of this court? Would it not be simply and only an obstruction put in the way of the court, and interfering with its deliberations upon a cause or matter after its submission, and of which it has acquired jurisdiction under the constitution and the laws defining, limiting and establishing its powers, and under the lawful procedure and practice through and by means of which the litigants had presented their several contentions to the court? We think it would be an illegal attempt to interfere with the operations of the judiciary in the performance of its duties after it had acquired jurisdiction.

It is doubtless true that the legislature has power by "regulations" to establish the procedure in civil and criminal cases (that is, the steps to be taken by the parties in an action or other legal proceeding before this court), so far as such procedure does not amount to a denial of justice, and has power to declare by law what shall be the practice on appeal (that is to say, to fix the form, manner and order of conducting and carrying on causes through their various stages according to the principles of law) ; but we cannot see how the power to make regulations (that is, to establish procedure and practice) includes the power to interfere with the discretion of this court in saying that the instruments filed for the reading of the justices of the court shall be printed and upon certain sized paper, to the end that causes may be conveniently heard and disposed of, and not delayed by the necessity of handling and reading papers which are inconvenient in shape and condition.

To admit power in the legislature to annul the rule referred to, and to permit the appellant, at his option, to compel the justices, desirous to learn the facts and to consider the points of counsel, to labor through a mass of carbon copies of typewritten matter, is as unwarranted as to admit that the legislature has power to authorize counsel, without the consent of court, to submit their causes without argument, oral or printed.

To require transcripts to be printed is to regulate the manner of hearing and considering, and does not interfere with any

right of the appellant to take and perfect his appeal, or to take or to omit any step in procedure, or to alter the practice; that is, the form, manner or order of conducting his appeal. The rule is only a declaration on the part of the court that, in doing its share of the labor in connection with the appeal, it must have the papers of such material substance, style and size that the justices may not have their labors increased beyond what they should be.

Under the federal constitution the Supreme Court of the United States has appellate jurisdiction "under such regulations as the congress shall make." Is there a single lawyer in the world who believes that the latter-named court would recognize as valid an Act of congress such as our Senate Bill No. 101? If the answer to this question is "No," as it must be, then by what process of reasoning can we hold this Act of our legislature as binding upon this court?

Mr. Justice Field, of the Supreme Court of the United States, in 1859, when a justice of the Supreme Court of California, in *Houston* v. *Williams,* 13 Cal. 24, 73 Am. Dec. 565, speaking of an Act amending the Practice Act, and requiring the opinion of the court to be given in writing, said: "If the power of the legislature to prescribe the mode and manner in which the judiciary shall discharge their official duties be once recognized, there will be no limit to the dependence of the latter. If the legislature can require the reasons of our decisions to be stated in writing, it can forbid their statement in writing, and enforce their oral announcement, or prescribe the paper upon which they shall be written, and the ink which shall be used. And yet no sane man will justify any such absurd pretension. But where is the limit to this power if its exercise in any particular be admitted? The truth is, no such power can exist in the legislative department, or be sanctioned by any court which has the least respect for its own dignity and independence. In its own sphere of duties, this court cannot be trammeled by any legislative restrictions." This opinion of the learned justice has never been adversely criticised by any court or by any law-book writer, so far as we have been advised.

It is true that the California constitution did not.in 1859 give the legislature power to make such regulations as are provided for in our constitution, but, in view of the inherent powers of our court, which we do not believe the constitution takes away and reposes in the legislature, we think the language of Justice Field appropriate to the matter before us; and we can reasonably believe that the Supreme Court of the United States would adopt the words and thoughts of Mr. Justice Field if congress should assume to act under the powers conferred by the constitution, and should enact a statute similar to our Senate Bill No. 101.

Although the cases were not upon facts identical with those in the case at bar, yet the views expressed by the court of Indiana in *In re Petition of Leach,* 134 Ind. 665, 34 N. E. 641, 21 L. R. A. 701, and by the Supreme Court of Illinois in *In re Application of Day,* 181 Ill. 73, 54 N. E. 646, 50 L. R. A. 519, go far to support what we have said above as to the inherent powers of this court, which are beyond the power of the legislature to control. In the latter case it was held that a statute overriding the rules of the court respecting the admission of attorneys, by requiring the admission of any person who began to study law before a specified time, provided he has obtained a diploma from a law school in the state after a specified period of attendance, or has passed a satisfactory examination before an examining board after a prescribed course of study, is an unconstitutional assumption of power properly belonging to the courts.

Senate Bill No. 101 is unconstitutional and of no binding force upon this court.

Examination of the transcript shows that there is nothing in the second ground of the motion.

As to the third point, it is sufficient to say that the interlineations and general appearance complained of are very apparent, and are such as will not appear in a printed transcript; but, on account of the fact that the appeal is to be dismissed upon the first ground of the motion, it is not necessary to say more as to this, the third ground.

The fourth ground is not tenable. The order appealed from is not one dissolving a mere restraining order, but one refusing an injunction *pendente lite,* and is appealable. The case of *Wetzstein* v. *Boston & Montana C. C. & S. Mining Co.* 25 Mont. 135, 63 Pac. 1043, does not apply, except so far as it shows the difference between a restraining order and an injunction *pendente lite.*

As appellants in good faith complied with the Act which attempts to grant the privilege of filing typewritten transcripts with carbon copies, they should not be called upon to suffer the loss of all opportunity to appeal.

Therefore this appeal is dismissed without prejudice to a motion to reinstate if a transcript be prepared, served and filed in accordance with Rules VI and IX of this court within sixty days from this date.

*Dismissed.*