21 So.2d 827

## Ex parte FOSHEE.

### 5 Div. 398.

Supreme Court of Alabama.

Jan. 25, 1945.

Rehearing Denied April 26, 1945.

Lawrence F. Gerald and Gerald & Gerald, all of Clanton, for petitioner.

G. C. Walker, Omar L. Reynolds, and Reynolds & Reynolds, all of Clanton, for respondent.

Henry Upson Sims and Hugh A. Locke, both of Birmingham, and W. C. Taylor, of Mobile, amici curiæ, supporting petition.

FOSTER, Justice.

Rule 56 of Equity Practice, Code 1940, Tit. 7 Appendix, is a combination of sections 6574 and 6575 of the Code of 1923, with minor additions regulating trial practice in equity in respect to the introduction of evidence on the trial. Section 289, Title 7, Code of 1940, is a legislative recognition of the equity rules adopted by this ·Court, authorized not only by Special Act ·of June 15, 1935, page 177, but by Code of 1923, section 6663 and § 10276(4), Code 1940, Tit. 13, § 17, in effect when the equity rules were adopted and became effective January 1, 1940. The Code of 1940 went into effect May 31, 1941.

Although not material for present purposes, we note that Rule 56 was not an ·original creature of this Court, but was taken from the Code of 1923, and recognized by section 289, Title 7, Code of 1940. Therefore, said rule is of legislative origin rather than the product of an exercise of judicial power. The Act of May 21, 1943, page 28, purports to amend this rule and at the same term the legislature also amended Rules 51 and 52 by an Act of July 10, 1943, page 405, and amended Rule 55 by another Act of July 10, 1943, page 406. The concrete question now presented for decision is whether such· amendment of Rule 56 was within legislative competency.

It has been the recognized doctrine in this State that a legislative enactment takes precedence over a rule of the Court. Nichols v. Dill, 222 Ala. 455, 132 So. 900; Williams v. Knight, 233 Ala. 42(5), 169 So. 871; Porter v. State, 234 Ala. 11, 174 So. 311; 21 Corpus Juris Secundum, Courts, § 176, p. 276 et seq.; 14 Amer. Jur. 347; 21 Corpus Juris Secundum, Courts, § 179, subsec. b, p. 288.

But there have been efforts to hamper the orderly functioning of this Court, which have been repudiated. Hackett v. Cash, 196 Ala. 403, 72 So. 52; Halle v. Brooks, 209 Ala. 486, 96 So. 341; Thornhill v. Gulf Coast Produce Exch., 219 Ala. 251, 121 So. 912; Buttrey v. Buttrey, 218 Ala. 268, 118 So. 282.

To make a rule for an inferior court this Court must have authority conferred either by the Constitution or by statute. 21 Corpus Juris Secundum, Courts, § 170, p. 264; State v. Roy, 40 N. M. 397, 60 P.2d 646, 110 A.L.R. 1.

Our Constitution, section 140, gives this Court superintendence and control of inferior jurisdictions, and that includes by implication the power to make rules, and it is therefore sometimes said to be an inherent power. 21 Corpus Juris Secundum, Courts, § 170, p. 264; State v. Roy, 40 N. M. 397, 60 P.2d 646, 110 A.L.R. 1.

But the Constitution confers on the legislature plenary power to legislate except as restricted by the Constitution, State or federal. Section· 44, Const.; Sisk v. Cargile, 138 Ala. 164, 172, 35 So. 114. This includes the power to prescribe rules of practice and procedure in the courts of the State. Porter v. State, 234 Ala. 11, 174 So. 311. See, Sibbach v. Wilson & Co., 312 U.S. 1, 655, 61 S.Ct. 422, 85 L.Ed. 479; Wayman v. Southard, 10 Wheat. 1, 42, 6 L. Ed. 253. The power of this Court flowing from the provisions of section 140 of the Constitution by inference and the power conferred on the legislature to prescribe rules of practice and procedure must be coordinated.

The power which this Court has to make rules and regulations for inferior courts is to do a judicial act. The legislative power to make the rules and regulations for all the courts is legislative. There are certain proceedings which are so vital to the efficient functioning of a court as to be beyond the legislative power. This Court may by section 140, supra, make rules and regulations which cover that field and also those which extend beyond it. The legislature has the same power in the latter field. But that of the legislature in it being by express constitutional grant is superior to that of this Court inferred merely from section 140, supra. The legislature may preempt that field or omit to act in it, so as to permit the court to have full sway temporarily in it. Or it may by legislative enactment give clear expression to the constitutional implication in the form of a delegation to this Court of the power to make rules of practice for inferior tribunals. In either event, the action by this Court is judicial in nature, but becomes the law pro tanto and remains so until it is amended or repealed.

But the failure of the legislature to act or its express authority to do so given to this Court is operative only until the legislature undertakes again to enter the field by making rules and regulations through legislative channels. It cannot permanently diminish or abrogate its constitutional power to be thereafter exercised to make laws, including those pertaining to practice and procedure. It cannot curtail future constitutionally authorized legislation.

Since the legislature can make rules of practice and procedure, it can amend any rules made by it, or by this Court, for an inferior court, unless by doing so it prohibits the due and orderly processes by which that court functions, or prevents it from properly functioning. 21 Corpus Juris Secundum, Courts, p. 288, § 179, subsec. b. The legislature may therefore amend the law as expressed in Equity Rule 56, unless by so doing it would hamper the proper functioning of the trial court. Our judgment is that the Act of May 21, 1943, supra, would not have that effect.

In amending that law, it is immaterial that it purports to amend a rule of this Court. The substance and effect is that it amends the law as thus expressed and refers to the rule for clarity. This is not objectionable, when as enacted it is complete, clear and precise within itself. Harris v. State ex rel. Williams, 228 Ala. 100, 151 So. 858.

The writ of prohibition prayed for is denied.

GARDNER, C. J., and THOMAS, BROWN, STAKELY and SIMPSON, JJ., concur.

LIVINGSTON, J., dissents.

LIVINGSTON, Justice (dissenting).

The petition filed in this cause prays that a writ of prohibition issue to Hon. Arthur Glover, Judge of the Nineteenth Judicial Circuit Court of Alabama, in Equity, prohibiting him from proceeding in the cause of Hill J. Foshee, complainant, v. Mattie E. Foshee, respondent, pending in the Circuit Court of Chilton County, Alabama, in Equity, and from trying said cause, as provided by the decree of said circuit court, dated June 14, 1944, by taking the testimony of complainant and respondent orally before the court, under the terms and conditions set forth in said decree.

Under Equity Rule 56, as adopted by this Court on October 9, 1939, to become effective January 1, 1940, the taking of testimony orally before the trial judge in equity cases, is a matter resting within the sound discretion of the trial court (see Equity Rule 56, Code of 1940, Title 7 Appendix). Under the rule as amended by the Legislature of 1943, the duty to so take the testimony is mandatory where a request for such hearing is made in writing by either party to the cause, or by his attorney. General Acts 1943, page 28, (see, also, Cumulative pocket part Code of 1940, Title 7).

It seems to be agreed that but for the mandatory provisions of the rule as amended, the trial judge would not have ordered an oral hearing in and by the decree of June 14, 1944. The questions here presented rest upon a determination of the legislative power to prescribe rules governing the equity courts in matters of practice and procedure.

The power of the courts to provide rules of pleading, practice and procedure, and the relation of such powers to the power of the legislature to establish rules for such purposes has been, because of the growing flood of demands for procedural reform, the topic of discussion in much periodical literature during the last two

decades, or more, and ·of an ever increasing body of judicial discussion in reported decisions. See 16 Amer. Bar Association Journal page 199; 12 Amer. Bar Association Journal pp. 548–599; 10 Ill.Law Rev. 163; 29 Ill.Law Rev. 1911; 19 St. Louis Law Rev. 163; 45 Yale Law Journal 622–641; 85 Univ. of Pa. Law Rev. 441. See, also, the many cases cited in the notes beginning on page 22 of Volume 110 A.L.R.

Practice or procedure, whichever one pleases to call it, is said by Dean Wigmore (23 Ill.Law Review) to be simply the way in which the judiciary performs its duties. and exercises its powers. I take it that the majority opinion of this Court concedes that the subject matter of Equity Rule 56 is purely procedural, and to this I agree.

I will not here attempt an explanation of how it happened that in England legislative prescribing of the details of procedure for a time superseded exercise of the rule-making power of the courts; and that in the United States we committed ourselves thoroughly for a season to habitual legislative interference with what ought to be left to the courts. We are, of course, bound to acknowledge that it did happen. An able and thorough explanation of the matter by Dean Roscoe Pound will be found in 12 Amer. Bar Association Journal, p. 599.

To determine whether the power to make rules of procedure for the courts is a judicial power or a legislative power we, of course, must turn to the Constitution.

The Constitution of Alabama provides:

"Section 42. The powers of the government of the State of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another."

"Sec. 43. In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be government of laws and not of men."

"Section 44. The legislative power of this state shall be vested in a legislature, which shall consist of a senate and a house of representatives."

"Sec. 139. The judicial power of the state shall be vested in the senate sitting as a court of impeachment, a supreme court, circuit courts, chancery courts, courts of probate, such courts of law and equity inferior to the supreme court, and to consist of not more than five members, as the legislature from time to time may establish, and such persons as may be by law invested with powers of a judicial nature; but no court of general jurisdiction, at law or in equity, or both, shall hereafter be established in and for any one county having a population of less than twenty thousand, according to the next preceding federal census, and property assessed for taxation at a less valuation than three million five hundred thousand dollars."

"Sec. 140. Except in cases otherwise directed in this constitution, the supreme court shall have appellate jurisdiction only, which shall be coextensive with the state, under such restrictions and regulations, not repugnant to this constitution, as may from time to time be prescribed by law, except where jurisdiction over appeals is vested in some inferior court, and made final therein; provided, that the supreme court shall have power to issue writs of injunction, habeas corpus, quo warranto, and such other remedial and original writs as may be necessary to give it a general superintendence and control of inferior jurisdictions."

It is of course elementary that the above quoted sections of the Constitution of this State, commit us to the doctrine of separation of powers. It is also fundamental and undeniable that the exercise of one department of powers expressly, or by necessary implication referred to another department, except in instances expressly directed or permitted, is prohibited. Sanders v. Cabaniss, 43 Ala. 173; In re Opinions of the Justices, 209 Ala. 593, 96 So. 487; State ex rel. Day et al. v. Bowles et al., 217 Ala. 458, 116 So. 662; Montgomery v. State, 231 Ala. 1, 163 So. 365, 101 A.L. R. 1394.

But as aptly stated by the Wisconsin court: "It is not only a matter of some difficulty to set precisely the border lines of legislative, executive, and judicial powers, but it also seems quite clear that, either by custom or constitutional mandate, or the inherent necessities of the situation, the three branches of government have here-

tofore exercised other powers than those which, under the doctrine of separation of powers, belong peculiarly and exclusively to them. In State ex rel. Wisconsin Inspection Bureau v. Whitman, 196 Wis. 472, 496, 220 N.W. 929, 938, the court said: 'What it seems to us is demonstrated by the discussion in the Hampton case, ([J. W. Hampton, Jr., & Co. v. United States], 276 U.S. 394, 48 S.Ct. 348, 72 L.Ed. 624), * * * is that there never was and never can be such a thing in the practical administration of the law as a complete, absolute, scientific separation of the so-called coordinate governmental powers. As a matter of fact, they are and always have been overlapping.' " In re Constitutionality of Section 251.18, Wisconsin Statutes, 204 Wis. 501, 236 N.W. 717, 718.

Section 139 of the Constitution of this State expressly vests the judicial power of the State "in the senate sitting as a court of impeachment, a supreme court, circuit courts, chancery courts, courts of probate, such courts of law and equity inferior to the supreme court, and to consist of not more than five members, as the legislature from time to time may establish, and such persons as may be by law invested with powers of a judicial nature."

Section 44 of the Constitution vests the legislative power of this State "in a legislature, which shall consist of a senate and a house of representatives."

While the repositories of the legislative and judicial powers are clearly designated, it is far from easy to determine whether the rule-making power is legislative or judicial. The lines between legislative and judicial powers are laid out as a resultant of history and analysis. State v. Harmon, 31 Ohio St. 250; Den ex dem. Murray v. Hoboken Land & Imp. Co., 18 How. 272, 15 L.Ed. 372; Fox v. McDonald, 101 Ala. 51, 13 So. 416, 21 L.R.A. 529, 46 Am.St. Rep. 98.

As to the power to make rules governing the procedure of the courts, there are two possibilities. The one is that the power is a power of doubtful classification which therefore may be exercised by the legislature or assigned by the legislature to the judiciary as appropriate to that department. The other is that the power of making rules of procedure is inherently judicial.

It has been held almost unanimously from time immemorial that courts have the inherent power to prescribe rules of practice and rules to regulate their own proceedings in order to facilitate the determination of justice, without any express permission from the legislative branch. McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300; Rule, 2 Dall. 411, 1 L. Ed. 437; Byers v. Smith, 4 Cal.2d 209, 47 P.2d 705; People v. Callopy, 358 Ill. 11, 192 N.E. 634; State v. Roy, 40 N.M. 397, 60 P.2d 646, 110 A.L.R. 1; Ernst v. Lamb, 73 Colo. 132, 213 P. 994; De Camp v. Central Arizona L. & P. Co., 47 Ariz. 517, 57 P.2d 311, 313; State v. Superior Court, etc., 60 Ariz. 69, 131 P.2d 983; Burney v. Lee, 59 Ariz. 360, 129 P.2d 308.

As early as Wayman v. Southard, 10 Wheat. 1, 42, 6 L.Ed. 253, where the court had occasion to construe its powers to make rules governing execution under the seventeenth section of the Judiciary Act of 1789, 1 Stat. 83, 28 U.S.C.A. § 385, which provides in part that: "All the said courts * * * shall have power * * * to make and establish all necessary rules for the orderly conducting of business in the said courts, provided such rules are not repugnant to the laws of the United States."

Mr. Chief Justice Marshall, referring to the point, then said:

"It will not be contended, that congress can delegate to the courts, or to any other tribunals, powers which are strictly and exclusively legislative. But congress may certainly delegate to others, powers which the legislature may rightfully exercise itself. Without going further for examples, we will take that, the legality of which the counsel for the defendants admit. The 17th section of the judiciary act, and the 7th section of the additional act, empower the courts respectively to regulate their practice. It certainly will not be contended that this might not be done by Congress. The courts, for example, may make rules directing the returning of writs and processes, and other things of same description. It will not be contended, that these things might not be done by the legislature, without the intervention of the courts; yet it is not alleged that the power may not be conferred on the judicial department.

"The line has not been exactly drawn which separates those important subjects, which must be entirely regulated by the legislature itself, from those of less interest, in which a general provision may be made, and power given to those who are to act under such general provisions, to fill up the details."

And again in Bank of United States v. Halstead, 10 Wheat. 51, 61, 6 L.Ed. 264, where a similar question arose, the court said: "It is said, however, that this is the true exercise of legislative power, which could not be delegated by Congress to the courts of justice. But this objection cannot be sustained. There is no doubt, that congress might have legislated more specifically on the subject, and declared what property should be subject to executions from the courts of the United States. But it does not follow, that because congress might have done this, they necessarily must do it, and cannot commit the power to the courts of justice. Congress might regulate the whole practice of the courts, if it was deemed expedient so to do; but this power is vested in the courts; and it never has occurred to any one, that it was a delegation of legislative power."

In Beers v. Haughton, 9 Pet. 329, 360, 9 L.Ed. 145, the Court, speaking through Mr. Justice Story, said, referring to those earlier cases: "It was there held, that this delegation of power by Congress was perfectly constitutional; that the power to alter and add to the process and modes of proceeding in a suit, embraced the whole progress of such suit, and every transaction in it, from its commencement to its termination, and until the judgment should be satisfied * * *. And it was emphatically laid down, that 'a general superintendence over this subject seems to be properly within the judicial province, and has always been so considered.' "

In my opinion the case of Wayman v. Southard, supra, does not stand for the proposition that the power of making rules of procedure for the courts is necessarily such a power of doubtful classification: a power which may be exercised by the legislature or assigned by the legislature to the judicial department,—that it might not properly be considered wholly judicial. It was enough for the purposes of that case that the rule making power could be upheld on the theory of a power of doubtful classification.

And in the more recent case of Hanna v. Mitchell, 202 App.Div. 504, 196 N.Y.S. 43, 51, it is said: "The power to make rules governing the practice and procedure in the courts is a judicial, and not a legislative, power. This was clearly recognized when the Code of Procedure was authorized to be adopted by the legislature. A change in the Constitution was found nec-

essary to confer the power upon the Legislature. The federal Constitution (article 3, §§ 1 and 2) seems to give greater power to Congress over the proceedings in the federal courts than is given by the state Constitutions to the Legislature, and yet the Supreme Court of the United States said: 'Congress might regulate the whole practice of the courts, if it was deemed expedient so to do; but this power is vested in the court, and it never has occurred to any one, that it was a delegation of legislative power.' "

In the case of Kolkman v. People, 89 Colo. 8, 300 P. 575, 584, the Supreme Court of Colorado said: "We do not, however, wish to be understood as saying that our right to make rules of procedure is granted or limited by section 444, Code of Civil Procedure, 1921. Aside from any common-law right, or statutory grant, the power to make rules of procedure is our constitutional right. Section 1, art. 6 of the Constitution of the state of Colorado, provides that, the judicial power of the state shall be vested in the courts; section 2 charges this court with 'a general superintending control over all inferior courts,' and article 3 of the same Constitution provides that the government shall be divided into three departments, of which the judicial is one, and also provides that neither department shall exercise any powers properly belonging to the other, except as in the Constitution expressly directed or permitted. A search of the Constitution warrants the statement that there is no provision therein expressly directing or permitting the legislative or executive departments to make rules with reference to trial procedure in the judicial department of the government. We are not called upon to determine what right and power the legislative department possesses, with reference to procedure in acquiring jurisdiction of the person or subject-matter, but the question with which we are concerned is the right, irrespective of the statutes and the common law, but in conformity with constitutional provisions, to make rules with reference to procedural matters for the conduct of trials. This is inherent in the judicial department. See 12 C.J. 1103; 6 R.C.L. 294; 1 Cooley's Constitutional Limitations (8th Ed.) 541–554; 23 Illinois Law Review 276; Journal American Judicature Society, December 1929; State [ex rel.] v. Superior Court, 148 Wash. 1, 267 P. 770." See, also, In re Constitutionality of Section 251.18, Wisconsin

Statutes, 204 Wis. 501, 236 N.W. 717, 718; State v. Superior Court, etc., 60 Ariz. 69, 131 P.2d 983; State v. Roy, 40 N.M. 397, 60 P.2d 646, 110 A.L.R. 1; People v. Callopy, 358 Ill. 11, 192 N.E. 634.

In Williams v. Knight, 233 Ala. 42, 169 So. 871, 876, it was said: "This court has the right to make rules in the exercise of its inherent power; and rules so made can be regulated or modified in a proper case by the Legislature where the inherent power of this court is not limited." See, also, Lee et al. v. Raiford, 171 Ala. 124, 54 So. 543.

Discussing the relation of rule making power of common law courts to American constitutional principle of separation of powers, Dean Roscoe Pound, in 12 American Bar Association Journal pages 599, 601, said:

"How do we determine what is executive, what is legislative and what is judicial? In practice, the lines are laid out as a resultant of history and analysis. In doubtful cases, however, we employ a historical criterion. We ask whether, at the time our constitutions were adopted, the power in question was exercised by the Crown, by Parliament, or by the judges. Unless analysis compels us to say in a given case that there is a historical anomaly, we are guided chiefly by the historical criterion.

"When American constitutions were adopted, the power to make general rules governing procedure was and has been for centuries in the King's courts at Westminster. Causes were not heard ordinarily at bar in these courts. They were tried at circuit. But the procedure was regulated by general rules of practice promulgated by the judges of the superior courts at Westminster. Turn to Tidd's Practice, which was the standard book on English procedure when our American constitutions were adopted. You will find there general rules of practice, some of which go back as far as Richard II, many as far as the Tudors, and several as far as the first years of James I, from which we date the reception of the common law in this country.

"Hence, if anything was received from England as a part of our institutions, it was that the making of these general rules of practice was a judicial function. Indeed, this was well understood in the beginning of American law. At the very outset, the Supreme Court of the United States, in answer to an inquiry by the Attorney General, said that the practice of the court of King's Bench would obtain for the time being, but that presently the court would promulgate some rules of practice. (See, Hayburn's case, 2 Dall. [409] 411, 1 L.Ed. [436] 437.) Not only was this done by the Supreme Court of the United States, but the old Supreme Court of New York, before 1847, promulgated rules of practice, very many of which were simply turned into sections of the Code of Civil Procedure and are in force under that guise today."

In the same Bar Journal, page 548, Prof. Edson R. Sunderland, writing on "The Exercise of the Rule Making Power," said:

"Never, in the eight hundred years since the Plantagenets laid the foundations of our system of judicial administration, did Parliament ever undertake to chain the courts to the chariot wheel of a legislative code of procedure. A few corrective statutes found their way into the law. Magna Charter prohibited the courts from selling justice, gave the common pleas a fixed location, and established the principle of trial by jury. A dozen statutes relating to amendments are found among the records of four centuries of parliamentary activity. Here and there new remedial rights were created and old procedural abuses were cut off. But there is no instance, in all English history, of parliament undertaking to assume to itself the political responsibility for the administration of justice, nor to offer its crude, fragmentary and stereotyped notions of procedure as a substitute for the expert opinions of lawyers. Not even during the storm and stress of the nineteenth century, when the flood of popular resentment threatened to engulf the profession, did Parliament lose its poise. The first great reform wave brought the Civil Procedure Act of 1833, in which a considerable number of procedural anomalies and restrictions were removed, but at the same time the preamble of the act recited that, since improvement in the methods of administering justice could not be conveniently accomplished otherwise than by the Rules and Orders of the judges, therefore the judges should make such alterations in the rules of pleading and practice as they should deem expedient. Out of this legislation grew the famous rules of Hilary Term, 1834. They did not satisfy the public. But instead of violently seizing the power and regulating legal procedure, Parliament again undertook to assist rather than oust the courts. The Common Law Procedure Act of 1852

was a fairly complete procedural code, in 239 sections, but it contained the remarkable provisions that the judges were nevertheless to retain complete power to make any rules regarding pleading and practice that they might deem expedient, anything in the present act to the contrary notwithstanding.

"* * * In the Judicature Act of 1873 the theory of professional responsibility found its final recognition in a statute which frankly abandoned even the form of a legislative mandate and substituted a schedule of Rules of Court."

The late Col. John H. Wigmore in 23 Illinois Law Review (1928-29), writing on the subject "All Legislative Rules for Judicial Procedure are Void Constitutionally," said: "It is high time to raise a constitutional question which has long remained in abeyance. We assert that the *legislature* (federal or state) *exceeds its constitutional power* when it attempts to impose upon the judiciary *any rules for the dis*patch of the Judiciary's duties; and that therefore *all legislatively declared rules for procedure,* civil or criminal, *in the courts, are void,* except such as are expressly stated in the Constitution."

As to equity courts, historically the matter is even more clear. The legislation in England down to the revolution, did not interfere at all with equity procedure. Equity procedure was wholly a matter of judicial working out down to the legislative reform movement in England in the 19th Century. But the legislative reform movement came after parliamentary supremacy had resulted from the revolution of 1688, and would not in any wise affect the question under the constitutional separation of powers in this Country. Lord Bacon's "ordinances" or orders as to chancery practice (1618) governed procedure in equity, with some modifications by successive chancellors at the time when our courts of equity were set up and are the foundation of the old equity rules of the Supreme Court, and thus of the present practice in equity. See, Beames Orders in Chancery; and there were such orders before Bacon. He only exercised in a comprehensive way a power already exercised by his predecessors. Kerly, History of Eq. 164.

On the question of the power of the Supreme Court to make rules governing inferior or trial courts, the following comment by Dean Roscoe Pound has been recently quoted with approval by several courts:

"As to trial courts, the historical argument already made is decisive of the power of the reviewing court of general jurisdiction to govern procedure by general rules, if not precluded by legislation. As the English judicial organization stood at the time our Constitutions were adopted, trials were not had in the courts of Westminster, as a rule. Trials at bar in the superior courts were rare. Causes were heard at circuit before the King's justices or commissioners of assize and nisi prius, so that a justice of the King's Bench might try at circuit under a commission of assize and nisi prius a cause depending in the common pleas or vice versa. In other words, the trial courts were independent tribunals, quite as old as the superior courts. But the proceedings in circuit were reviewed on motion for new trial, motions in arrest, motions for judgment and the like in the superior courts, in bank at Westminster, some of which had been in force since the seventeenth century.

"It would seem, therefore, that the supreme court of one of our states, which has always been looked upon as the historical equivalent of the court of King's Bench, might constitutionally be given power to regulate the practice in the causes it has the power to review in bank, as was the doctrine at common law as between the court of Westminster and the circuits.

"It should be noted that the statute of Colorado, enacted at the instance of the Bar Association of that state, proceeds upon this theory.

"Moreover, this power of the highest court of general jurisdiction of the state, representing the King's Bench in the common law judicial organization, to make general rules of practice which should govern also in the practice of inferior independent tribunals whose proceedings it had the power to review, was recognized in American legislation until the later tendency to govern every detail of procedure by statute caused the power for a time to be forgotten."

The Supreme Court of New Mexico said in the case of State v. Roy, 40 N.M. 397, 60 P.2d 646, 662, 110 A.L.R. 1, 21, 22:

"As stated in the note to People ex rel. Green v. Court of Appeals of Colorado, 51 L.R.A. 111: 'The power of superintending control is an extraordinary power. It is hampered by no specific rules or means for its exercise. It is so general and comprehensive that its complete and full

extent and use have practically hitherto not been fully and completely known and exemplified. It is unlimited, being bounded only by the exigencies which call for its exercise. As new instances of these occur it will be found able to cope with them. And, if required, the tribunals having authority to exercise it will by virtue of it possess the power to invent, frame, and formulate new and additional means, writs, and processes whereby it may be exerted.'

"Being satisfied as we are that chapter 84 is not a grant of power, there is nothing violative of fundamental law or the Constitution in this, the highest judicial body in the state, to prescribe rules for an inferior judicial body.

"It is at once manifest that such a power should be placed, and was placed, with the reviewing court, since we are always charged with the duty of determining whether the rulings of the trial court have been such as to operate to the disadvantage of the litigants. State ex rel. Ross v. Call, 39 Fla. 504, 22 So. 748. This need has been recognized from the earliest times. It has been the source of much historical investigation, and the results thereof have been sufficiently stated by that able lawyer and scholar, Dean Roscoe Pound, who has summed the matter up in an article in 10 Ill.Law Rev. p. 172, which we have heretofore quoted from In re Constitutionality of section 251.18, Wisconsin Statutes, supra."

In the case of Spear et al. v. Virginia-Carolina Chemical Corp., 223 Ala. 448, 136 So. 805, it was held that a rule of the circuit court was void because inconsistent with a rule adopted by this Court governing the practice in the trial court.

The following cases deny all legislative control. In the case of Jordan v. Andrus, 26 Mont. 37, 66 P. 502, 91 Am.St.Rep. 396, it was held that the legislature had no authority to provide that transcripts may be printed or typewritten, in contravention of a rule of court requiring transcripts to be printed. See, also, State ex rel. Schneider v. Cunningham, Auditor, 39 Mont. 165, 101 P. 962.

In the concurring opinion of Mr. Justice Ellis in the case of Davis v. Wilson & Toomer Fertilizer Co., 84 Fla. 102, 92 So. 916, 917, it was said: "The act violates section 2 of the Constitution—unauthorized interference by the Legislature with the inherent power of the courts to regulate the manner of hearing and considering causes submitted. The number of transcripts to be filed and the character of such papers is a matter entirely within the sphere of the duties of the court. Jordan v. Andrus et al., 26 Mont. 37, 66 P. 502, 91 Am.St.Rep. 396."

In the case of Herndon v. Imperial Fire Ins. Co., 111 N.C. 384, 16 S.E. 465, 18 L.R.A. 547, it was held that a rule of court requiring the indorsement of one of the justices of the court before a petition for rehearing could be granted, should prevail, even though in conflict with a legislative enactment.

In the case of Riglander v. Star Co., 98 App.Div. 101, 90 N.Y.S. 772, affirmed in 181 N.Y. 531, 73 N.E. 1131, a case closely analogous to the instant case, although no rule of court was involved,—it was held that a section of the code of civil procedure is unconstitutional, in that it attempts to deprive the court of the power to exercise that judicial discretion as to the conduct of the business before it which has always been its prerogative, and thus constitutes an encroachment by the legislative branch of the government of the state upon the judicial branch of the government.

In Vaughn v. Harp, 49 Ark. 160, 4 S.W. 751, it was held that the legislature is without authority to compel the court to assign reasons for its decisions.

In this jurisdiction—the Legislature of 1915, Gen.Acts 1915, p. 824, amended section 5359 of the Code (now section 260, Title 7, Code of 1940). The section as amended provided for trials without a jury in all courts unless it was demanded, and did away with the necessity of excepting to the finding or conclusion of the trial court upon the facts in order to review the same in the appellate court, and, further, provided "and the Supreme Court, or Court of Appeals shall review the same with no presumption in favor of the finding of the trial court on the evidence." In the case of Hackett v. Cash, 196 Ala. 403, 406, 72 So. 52, 53, it was said that the legislature "did not mean to override a long line of decisions of this court as to what weight would or would not be accorded the conclusion of the trial court upon the facts. *Moreover, if it was otherwise intended, it would be an invasion of the judiciary to require this court to disregard the finding of the trial court upon facts when said trial court had a better opportunity to pass upon and consider the evidence than the appellate court.*" (Italics ours.) The case

of Finney v. Studebaker Corp. of America, 196 Ala. 422, 72 So. 54, is to like effect.

Section 2846 of the Code, as amended by the Acts of the Legislature of 1915, Gen. Acts 1915, p. 722, now section 764, Title 7, Code of 1940, provided for appellate review of the trial court's action in granting or refusing motions for new trial, and that "no presumption in favor of the correctness of the judgment of the court appealed from, shall be indulged by the appellate court." In Hatfield v. Riley, 199 Ala. 388, 74 So. 380, this Court sustained the trial court's refusal to grant a new trial. It was there said: "The trial court had the witnesses before him, and had the advantage of observing their manner and demeanor on the stand. Under the long-established rule of this court in such circumstances, the presumption is in favor of the correctness of his ruling. This rule has not been changed by recent legislative enactment. Acts 1915, p. 722. The reasoning in the cases of Hackett v. Cash [196 Ala. 403], 72 So. 52, and Finney v. Studebaker Corp. [196 Ala. 422], 72 So. 54, applies to the above cited act."

In the case of Alabama Western R. Co. v. Talley-Bates Const. Co., 162 Ala. 396, 50 So. 341, 345, in considering that part of section 4628 of the Code of 1907, now section 7, Title 13, Code of 1940, which recites, "Whenever a case is argued orally, the opinion must be delivered by a justice who heard the oral argument", it was said by the late Mr. Justice Sayre, "without conceding the power of the Legislature to control this court in the discharge of its constitutional duty to render decisions in causes brought here—for it appears to us to be doubtful, to say the least, whether the Legislature has any such power (Houston v. Williams, 13 Cal. 24, 73 Am.Dec. 565; Ex parte Griffiths, 118 Ind. 83, 20 N.E. 513, 3 L.R.A. 398, 10 Am.St.Rep. 107; Clapp v. Ely, 27 N.J.L. 622; Vaughn v. Harp. 49 Ark. 160, 4 S.W. 751; Speight v. People, 87 Ill. 595; Herndon v. Imperial [Fire] Ins. Co., 111 N.C. 384, 16 S.E. 465, 18 L.R.A. 547; Jordan v. Andrus, 26 Mont. 37, 66 P. 502, 91 Am.St. Rep. 396; Riglander v. Star Co., 98 App. Div. 101, 90 N.Y.S. 772, affirmed in 181 N.Y. 531, 73 N.E. 1131)—we are of opinion that the appellee is not in a position to invoke the application of the statute." The Court holding that the application of the statute had been waived.

On July 12, 1943, the Legislature of this State adopted an act abolishing bills of exceptions, and substituted therefor a different method for presenting matters, not a part of the record proper, to this Court for review on appeal. On June 28, 1944, this Court, in the exercise of its inherent power, adopted Supreme Court Rule 48, Code 1940, Tit. 7 Appendix, which, in my opinion, wrought material change in the legislative act of July 12, 1943. See, General Acts 1943, page 423, Title 7, § 827(1), Cumulative Pocket Part Code of 1940; 245 Ala. XXI.

But it is said that the foregoing Alabama cases, and others to like effect, are cases involving legislative made rules of procedure, which hamper the orderly functioning of this Court, and have been repudiated. The clear implication is that there are different kinds, classes or grades of rules of procedure: that there is a distinction or dividing line between such rules: that the legislature has the power to prescribe one but not the other. I do not think such a distinction can be made between rules of procedure governing this Court, nor between rules of procedure governing the trial courts.

As stated above, procedure is simply the way in which the judiciary performs its duties and exercises its powers. Whether the rule hampers the orderly functioning of the court or not is no proper criterion in determining the power to make it.

In truth, procedure of the courts is something that belongs to the courts rather than to the legislature, whether we look at the subject analytically or historically. Analytically, there is no more warrant for the legislature's imposing a strait-jacket of statutory procedure upon the courts than for its doing the like with the executive branch. No one supposes that the courts can impose their general ideas of fitness and propriety upon legislative procedure or executive procedure. Clear enough, if the legislature provided no rules of procedure the courts could and would enact its own as a matter of necessity. It is equally clear that, if instead of providing no rules at all, the legislature provided an inadequate or unworkable system under which the court found itself unable to perform the constitutional duties in a satisfactory manner, the courts could, under their inherent power, disregard the legislative scheme and adopt a better one of their own. That this Court has so regarded its power is clearly demonstrated by its adoption of Supreme Court Rule 48, cited above.

In the matter of the organization of the Bar, an analogous question has been involved. Some courts have held that the power to organize the bar is judicial, and that legislation is not required to enable the court to prescribe it by rules. In the matter of requirements for admission to the bar and conduct of bar examinations, I think it is all but universally held that this is a matter for the courts, except that the police power would involve the setting up of a minimum of statutory requirements. See Ex parte Thompson, 228 Ala. 113, 152 So. 229, 107 A.L.R. 671.

It is my opinion that, although this Court has in the past accepted the co-operation of the legislature in the matter of making rules of procedure for the courts, it is not compelled to do so: that the power to make rules governing the procedure of courts is inherently judicial, and that this Court has the inherent power to prescribe rules of procedure governing the trial courts.

While the foregoing is, in my opinion, sufficient to dispose of the entire matter, there is another phase of the case which I feel should be now considered.

The Legislature of Alabama of 1935 passed the following Act:

"Section 1. The Supreme Court of Alabama or a majority thereof are hereby authorized and empowered while sitting as a Court to adopt a new system of pleading, practice and procedure in actions and proceedings under the equity jurisdiction of the courts of Alabama, including the Supreme Court of Alabama, for the purpose of simplifying the same and of promoting the speedy determination of equity litigation upon its merits; and in so doing the Supreme Court of Alabama may disregard any and all statutes and rules of court or court decisions now existing which may be inconsistent with any new rule or rules they may adopt, insofar as it is not prevented by the Constitution of Alabama and the Constitution of the United States.

"Section 2. The Supreme Court of Alabama is further authorized and empowered to adopt changes in such new system of rules from time to time.

"Section 3. All statutes relating to equity pleading, practice and procedure shall have force and effect only as rules of court and shall remain in effect unless and until modified or suspended by rules promulgated pursuant hereto.

"Section 4. To aid and advise the Supreme Court of Alabama in the preparation of such system of rules as they may adopt under authority of this Act, the Chief Justice of the Supreme Court of Alabama is authorized to appoint a committee of not exceeding three members of the Bar of said Court, substituting members of said committee from time to time, which committee shall serve without pay, but shall receive their expenses, as may be approved by the Chief Justice of the Supreme Court of Alabama.

"Section 5. Before adopting a new system of rules, under the authority of this Act, the Supreme Court of Alabama shall publish the said system of rules in pamphlet form and see that they are distributed throughout the Bar of this State, and shall give thirty days' notice of their intention to adopt the same, by publication of the proposed date set for adoption, in a newspaper published in Montgomery, Alabama; and on said date, whether in term time or vacation, the Supreme Court shall meet, and consider the said proposed rules; and shall give authority to citizens wishing to attend, to be heard against said proposed rules in so far as they repeal existing statutes of this State; and the Court may adjourn said hearing from time to time.

"Section 6. All presently existing statutes of this State in so far as they affect the practice and procedure under the equity jurisdiction of the Courts of Alabama are hereby repealed from and after the adoption by the Supreme Court of Alabama of a new system of rules as authorized by this Act, in so far as such presently existing statutes shall be in conflict with such new system of rules." Acts of 1935, page 177.

As stated above, after the passage of the foregoing Act, and on October 9, 1939, this Court adopted, to become effective on January 1, 1940, the equity rules now found in the appendix to Title 7 of the Code of 1940, and one of which is Equity Rule 56. These rules are not acts of the legislature, and their inclusion in the Code of 1940 has no significance in that respect.

The Act of 1915, page 607, which is the same as section 6663, Code of 1923, and the Act of 1935, page 177, were carried into the Code of 1940, as sections 289 and 290, Title 7. They are as follows:

"289. The Alabama equity rules adopted by the supreme court for equity practice

in the courts of this state are hereby recognized; and the supreme court is empowered to adopt, from time to time, rules of pleading, practice and procedure in suits and proceedings in equity, and to amend the same, and said court may disregard any statutes, and rules of court or decisions inconsistent therewith, insofar as the same may be done agreeably to the Constitutions of Alabama and of the United States.

"290. Should provisions of this title be applicable to suits and causes in equity, the rules for equity practice adopted by the supreme court, and as amended hereafter, where applicable shall prevail in suits and causes in equity."

I do not think that the Code Committee who prepared the 1940 Code or the Legislature which adopted it, intended to or did restrict, alter or change the 1935 Act by carrying it into the Code in the shorter form of sections 289 and 290, supra.

Under this situation or status, the Legislature of 1943 amended Equity Rule 56, as above indicated.

The instant case clearly demonstrates that there is little or no hope for procedural improvement where two co-ordinate governmental departments attempt the role of rule making.

It is clear enough that the Act of 1943, amending equity rule 56, did not expressly or impliedly repeal sections 289 and 290, supra, in toto. Did it by implication repeal said sections in part, that is to say, insofar as the matter contained in rule 56 is concerned? If sections 289 and 290, supra, remain unimpaired, it must follow that this Court could today under the authority of said sections, change Rule 56 to meet the Court's idea of fitness and propriety, and under the majority opinion, the next legislature can change the rule again; and so long as sections 289 and 290 remain unimpaired the procedure can be repeated. To hold that sections 289 and 290, supra, were repealed in part is to say that the subject matter of Rule 56 is presently within legislative control: all other matters of equity procedure are presently subject to rules made by the Court, and this Court may presently disregard all procedural statutes save those enacted by the Legislature of 1943.

But it is argued that the legislature can take back what it can give. The argument is of course sound, but here the premise on which it is based is false. The answer is, the legislature had nothing to give, as the power to prescribe rules of procedure for the courts is inherently judicial. The same argument supports the court in taking back the rule making power which it, to a certain extent, surrendered to the legislature for many years. Conceding that the legislature has some rule making power, all the authorities, sofar as I know, agree that the legislative power is not exclusive. It can be declared with certainty that the courts possess rule making power. But it is said that the legislative power and the judicial power should be coordinated. There is no field for coordination unless we say that the courts have power to make rules of procedure only when the legislature fails to act, or that there are different classes or kinds of procedural rules: the one class within the legislative power, the other within the power of the judiciary. I cannot agree to either proposition. I think we must determine which power is predominant.

In Burton v. Mayer, 274 Ky. 263, 118 S.W.2d 547, 549, the court said: "Section 109 of the State Constitution vests the 'judicial power' of the Commonwealth 'in the senate when sitting as a court of impeachment, and one supreme court (to be styled the court of appeals) and the courts established by this Constitution.' The separation of the judicial power from the executive power and the legislative power was not merely a matter of convenience. The three branches of government are co-ordinate and yet each, within the administration of its own affairs, is supreme. The grant of the judicial power to the courts carries with it, as a necessary incident, the right to make that power effective in the administration of justice under the Constitution. Capps v. Gore, 231 Ky. 185, 21 S.W.2d 266; Commonwealth ex rel., etc., v. Harrington, 266 Ky. 41, 98 S.W.2d 53; In re Sparks, 267 Ky. 93, 101 S.W.2d 194. Rules of practice and procedure are, fundamentally, matters within the judicial power and subject to the control of the courts in the administration of justice. The courts accept legislative co-operation in rendering the judiciary more effective. They deny the right of legislative dominance in matters of this kind.—Dowling, 'The Inherent Power of the Judiciary,' Vol. XXI, American Bar Association Journal, page 635."

The following quotation is from the very recent case of Ploughe v. Indianapolis Rys., Inc., 222 Ind. 125, 51 N.E.2d 626, 627: "The contention that the subject of court procedure is within the exclusive jurisdiction of the legislative branch of the government, and that the courts are powerless to make rules governing their own business, is as unique as it is novel. Carried to its logical conclusion, this means that the courts of this state are at the mercy of the General Assembly, which, conceivably, may destroy our entire judicial system by the simple artifice of imposing unworkable procedural regulations. We subscribe to no such doctrine."

I am convinced that in the procedural rule making field, the inherent power of the judiciary must prevail, not merely on the grounds of expediency and for the sake of better and more effective administration of justice, but as a matter of due regard for the constitutional system of separation of powers. None of the coordinate and coequal departments of our polity can do its work effectively if the minute details of its procedural operations, as distinct from the substantive law it applies or administers, are dictated by some other department. In my opinion, this Court has the inherent power to prescribe rules of procedure for the performance of its constitutional duties, and to prescribe rules governing the trial courts.

I therefore respectfully dissent.